SOUTH COMMUNITY, INC., APPELLEE, *v.*
STATE EMPLOYMENT RELATIONS BOARD ET AL., APPELLANTS.

[Cite as South Community, Inc. *v.* State Emp. Relations Bd. (1988), 38 Ohio St. 3d 224.]

(No. 87-953—Submitted March 8, 1988—Decided August 24, 1988.)

*Pickrel, Schaeffer & Ebeling Co., L.P.A., Andrew C. Storar* and *Janet K. Cooper,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, *Robert E. Ashton, Loren L. Braverman* and *Susan Hayest Kozlowski,* for appellant SERB.

*Lucas, Prendergast, Albright, Gibson & Newman, Robert J. Walter* and *Mark R. Scherer,* for appellant OAPSE.

*Sponseller & Segel, Nancy L. Sponseller* and *Benjamin B. Segel,* urging affirmance for *amici curiae,* Hamilton County Board of Mental Retardation and Developmental Disabilities et al.

*Means, Bichimer, Burkholder & Baker Co., L.P.A., Robert T. Baker* and *Kimball H. Carey,* urging affirmance for *amicus curiae,* Ohio School Boards Assn.

*Steze, Delbaum & Hickman Co., L.P.A.,* and *Franklin J. Hickman,* urging affirmance for *amicus curiae,* Ohio Association of County Boards of Mental Retardation and Developmental Disabilities.

HOLMES, J. R.C. 119.12 provides generally for appeals of adjudication orders issued by an "agency." "Agency" is defined in R.C. 119.01(A), which states, in pertinent part:

" 'Agency' means * * * the functions of an administrative or executive officer, department, division, bureau, board, or commission of the government of the state specifically made subject to sections 119.01 to 119.13 of the Revised Code * * *."

R.C. 4117.02(M) specifically makes SERB subject to R.C. 119.01 to 119.13:

"Except as otherwise specifically

provided in this section, *the board [SERB] is subject to Chapter 119.* of the Revised Code, *including* the procedure for submission of proposed rules to the general assembly for legislative review under division (H) of section 119.03 of the Revised Code." (Emphasis added.)

Thus, it appears that SERB is an agency subject generally to R.C. Chapter 119. However, appellants urge this court to limit R.C. Chapter 119's application solely to rulemaking provisions, and thereby exempt SERB's adjudications from that chapter's appeal procedures. To achieve appellants' desired interpretation, however, one must ignore the express language of R.C. 4117.02(M), and the intention of the General Assembly as revealed therein. The legislature's choice of the word "including" in R.C. 4117.02(M) indicates a clear intention not to limit, but merely to describe or illustrate. The word "including" obviously is one of enlargement, and not limitation. See, *e.g.,* R.C. 1707.01(P).

Additionally, if the General Assembly had intended R.C. Chapter 119 to be applied only to SERB's rulemaking, it could have so stated as it has often done with other agencies. As an example, R.C. 119.01(A) makes it clear that R.C. Chapter 119 applies to the Bureau of Employment Services only to a limited extent:

"* * * Sections 119.01 to 119.13 of the Revised Code do not apply to actions of the bureau of employment services except those relating to the adoption, amendment, or rescission of rules, and those relating to the issuance, suspension, revocation, or cancellation of licenses."

Obviously, there is no such limiting language found here applicable to this chapter of law. Instead, the legislature provided that SERB was an agency generally subject to R.C. Chapter 119, including, but not limited to, that chapter's rulemaking provisions. It behooves this court to follow the legislative intent in this regard and not delete the word "including" from R.C. 4117.02(M), and substitute the words "limited to."

Appellants contend that the specific right-of-appeal provisions included in R.C. Chapter 4117 are exclusive, and that by reference, R.C. 4117.02(M) is not to be interpreted as a general right of appeal under R.C. 119.12. Accordingly, it is argued by appellants that the Public Employees' Collective Bargaining Act has provided the only appeals available under R.C. Chapter 4117, which are appeals in those special circumstances that involve an appeal from a final order in an unfair labor practice proceeding, by way of R.C. 4117.13(D), or an appeal of a penalty for an unlawful strike by way of R.C. 4117.23.

However, it is argued by appellee herein, and we agree, that R.C. 4117.13(D) and 4117.23 do not conflict with R.C. 4117.02(M), but merely set forth those circumstances requiring specific procedures to initiate the right of appeal. The procedure for an appeal from a final order in an unfair labor practice proceeding is outlined in R.C. 4117.13(D). This section sets forth the specific procedure to be followed and states that the jurisdiction for such appeal is in "the court of common pleas of any county where the unfair labor practice in question was alleged to have been engaged in, or where the person resides or transacts business * * *." This latter section also sets forth the review authority of the court of common pleas. As to the factual findings of the board, it limits the court of common pleas as follows: "The findings of the board as to the facts, if supported by substantial evidence on the record as a whole, are conclusive." As to the final determination of the court

of common pleas, this section grants broad jurisdiction by providing that: "The court has exclusive jurisdiction to grant the temporary relief or restraining order it considers proper, and to make and enter a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the board."

R.C. 4117.23 provides for an appeal to the board by an employee of a penalty imposed by the employer for an unauthorized strike, and thence to the court. However, this section provides no procedures or standards for such review. R.C. 4117.13(D) and 4117.23 then do provide for special circumstances quite separate and apart from other matters that could reasonably be presented for a general review pursuant to R.C. 119.12. The specific issues that would be presented pursuant to an appeal of an order in an unfair labor practice proceeding, and the issues presented in an appeal by an employee of a penalty in an unauthorized strike procedure, would be considerably more narrow than the general issues of law that might be brought in an R.C. 119.12 appeal.

Even more restrictive is the specific issue provided for determination within R.C. 4117.06(A), and that is "the unit appropriate for the purposes of collective bargaining." In this instance, the legislature has deemed SERB to be the appropriate final authority to determine from among a number of competing bargaining units which one is appropriate. This section provides that the board's "determination is final and conclusive and not appealable to the court."

R.C. 4117.06(A) does not apply to the issues presented by South Community in this case, *i.e.,* the initial issue of whether these employees are "public employees" subject to the Act, and the issue of whether certain of the employees should have been entitled to vote in the rerun election. In that the exception to appealability of SERB's order does not apply here, and the more specific appellate sections of this Act are not applicable, the general grant of the right to appeal under R.C. 119.12, provided by R.C. 4117.02(M), would be applicable.

Appellant SERB contends that this court's decision in *State, ex rel. Dayton Fraternal Order of Police Lodge No. 44,* v. *State Emp. Relations Bd.* (1986), 22 Ohio St. 3d 1, 22 OBR 1, 488 N.E. 2d 181, implicitly recognized that there exists no right of appeal such as we have herein. Such a holding is not to be found either within the syllabus or the opinion of that case. The *Dayton* case was a mandamus action brought by the relator for the purposes of obtaining a determination that the second sentence of R.C. 4117.01 (F)(2), the so-called Dayton Amendment, was unconstitutional, and to compel SERB to reinstate relator's "Request for Voluntary Recognition." The court found that the subject statutory provision was unconstitutional.

In addition, the court rejected the respondent city of Dayton's argument that relator had an adequate remedy at law under R.C. 2506.01. The court relied on two grounds in rejecting such argument. First, it noted that R.C. 2506.01, "* * * by its own terms, applies only to decisions made by some authority of a 'political subdivision' of the state." *Dayton, supra,* at 7, 22 OBR at 6, 488 N.E. 2d at 186. As the court stated, the term "political subdivision" does not include the state of Ohio or its agencies; therefore, R.C. 2506.01 could not provide for appeals of determinations by SERB, since it is a state agency. *Id.* Second, the court stated, the specific terms of R.C. 4117.06(A) make SERB's determina-

tion of the appropriate bargaining unit final and non-appealable. Since the issue raised by relator involved unit determination, R.C. 4117.06(A) prohibited an appeal. Therefore, the court held that relator had no adequate remedy at law under R.C. 2506.01 and was entitled to maintain its mandamus action.

Also, the appellants argue that appeal of the issues sought here should also be denied based upon a comparative analysis of the chapter of Ohio law pertaining to the Public Employees' Collective Bargaining Act and the National Labor Relations Act. We feel that it is not necessary to go into any great detail in the analysis of each of these laws and their similarities and differences. It need only be noted that the National Labor Relations Board deals with private sector employers and employees, and SERB deals with public sector employers and employees. The General Assembly has considered the public policy differences, and so enacted R.C. Chapter 4117. Finally, even though we would review the present issues within the general context of the National Labor Relations Act, Ohio's Act specifically provides for the appeal sought herein by way of R.C. 4117.02(M), which quite clearly carries out the legislative purpose to make SERB subject to R.C. Chapter 119.

Based upon all the foregoing, we hold that R.C. 4117.02(M) creates a general statutory right of appeal and vests jurisdiction in the court of common pleas to determine the issues attempted to be appealed by South Community.

Accordingly, we hereby affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., LOCHER and WRIGHT, JJ., concur.

SWEENEY, DOUGLAS and H. BROWN, JJ., dissent.

DOUGLAS, J., dissenting. Because I believe there is no right of appeal in this case, I dissent.

The most persuasive arguments advanced by appellants, arguments I find utterly compelling, are not even addressed in the majority opinion. The first of these involves the language of R.C. 119.12, which precludes an appeal in this case.

R.C. 4117.02(M) states that "[e]xcept as otherwise specifically provided in this section, the [state employment relations] board is subject to Chapter 119 of the Revised Code * * *." The majority seems to believe that this provision automatically means a right of appeal always exists unless otherwise specified in R.C. 4117.02. Clearly, this is not the case. The above section merely states that "the board is subject to Chapter 119 * * *," which must mean that the board is subject to *all* the provisions of that chapter, including those which withhold any right of appeal. In this case, the very portion of R.C. 119.12 quoted by the majority, in a footnote, without analysis, actually precludes appellee's appeal.

R.C. 119.12 provides in pertinent part:

"Any party adversely affected by any order of an agency issued pursuant to any other *adjudication* may appeal to the court of common pleas of Franklin county * * *." (Emphasis added.)

"Adjudication" is defined in R.C. 119.01(D) as "* * * the determination by the highest or ultimate authority of an agency of the rights, duties, privileges, benefits, or legal relationships of a specified person * * *."

Appellee is attempting to appeal SERB's determinations that appellee's employees are "public employees" and that the employees eligible to vote in the re-run election are limited to those

who were eligible to vote in the first election. These orders are purely interlocutory in nature, and, hence, are not appealable. Only final adjudications are appealable under R.C. 119.12. *State, ex rel. Harris, v. Williams* (1985), 18 Ohio St. 3d 198, 18 OBR 263, 480 N.E. 2d 471. " '[T]he touchstone of finality * * * [is] the fixing of obligations or legal relationships.' " *Id.* at 201, 18 OBR at 265, 480 N.E. 2d at 473. The orders appellee is attempting to appeal fix no obligations and impose no liability; they were merely preparatory to further proceedings, *i.e.*, the representation election and the certification of its results.

That an administrative order must be final before it becomes appealable under R.C. 119.12 is further clarified by the provisions of R.C. 2505.03(A), which states in relevant part:

"Every final order, judgment, or decree of a court and, when provided by law, the *final order* of any administrative officer, agency, board, department, tribunal, commission, or other instrumentality may be reviewed on appeal by a court of common pleas * * *." (Emphasis added.)

Thus, the appeal "provided by law" under R.C. 119.12 is strictly limited to appeals of final orders. A "final order" is defined in R.C. 2505.02 as "[a]n order that affects a substantial right made in a special proceeding." Absolutely *no* substantial right *of appellee* has been affected by this proceeding. SERB's administration of the election and the certification of its results do not impinge on any right of appellee in this case. The election is concerned solely with the question of the representation of appellee's *employees* in the collective bargaining process. Thus, appellee has no right of appeal.

Additionally, this court has held that "[b]efore an appeal can successfully be brought to the Court of Common Pleas of Franklin County under the provisions of R.C. Chapter 119, the proceedings of the administrative agency must have been quasi-judicial in nature." *State, ex rel. Bd. of Edn.*, v. *State Bd. of Edn.* (1978), 53 Ohio St. 2d 173, 176, 7 O.O. 3d 357, 358, 373 N.E. 2d 1238, 1241, citing Section 4(B), Article IV of the Ohio Constitution. SERB representation election proceedings are fundamentally administrative. It is obvious from the provisions of R.C. 4117.07 that the function of SERB is to supervise the election to ensure that it is properly and fairly conducted. SERB's role does not involve the exercise of discretion of a judicial nature.

The conclusion that SERB's orders in representation elections are non-appealable finds further support in the analogous federal case law. Following the holding of the United States Supreme Court in *American Federation of Labor* v. *NLRB* (1940), 308 U.S. 401, federal courts uniformly rule that there is no direct judicial review of proceedings for certification of elections of the collective bargaining representative. See, *e.g.*, *Charlie Rossi Ford, Inc.* v. *Price* (C.A. 9, 1977), 564 F. 2d 372; *Internatl. Union, United Auto., Aerospace & Agricultural Implement Workers of America* v. *NLRB* (C.A.D.C. 1971), 449 F. 2d 1046, 1048, at fn. 2.

Furthermore, this court has held that, in certain circumstances, the jurisdiction of an administrative agency will be deemed to be exclusive. For example, this court has ruled that "[t]he jurisdiction specifically conferred by statute upon the Public Utilities Commission over public utilities of the state * * * *is so complete, comprehensive and adequate as to warrant the conclusion that it is likewise exclusive.*" (Emphasis added.) *State, ex rel. Ohio Bell Tel. Co.*, v. *Court* (1934), 128 Ohio St. 553, 557, 1

O.O. 99, 100-101, 192 N.E. 787, 788-789. See, also, *State, ex rel. Northern Ohio Tel. Co.,* v. *Winter* (1970), 23 Ohio St. 2d 6, 52 O.O. 2d 29, 260 N.E. 2d 827; *State, ex rel. Geauga Cty. Budget Comm.,* v. *Court* (1982), 1 Ohio St. 3d 110, 1 OBR 143, 438 N.E. 2d 428 (Board of Tax Appeals). Where such exclusive jurisdiction is vested in an administrative agency, assertion of jurisdiction by a court constitutes a usurpation of judicial authority. *Winter, supra,* at 9, 52 O.O. 2d at 30, 260 N.E. 2d at 829.

A review of R.C. Chapter 4117 reveals that the jurisdiction vested in the State Employment Relations Board is immense in its scope. The board was vested with the authority to, *inter alia,* hold hearings, R.C. 4117.02(H)(3), conduct investigations, R.C. 4117.02(G), adopt rules and procedures, R.C. 4117.02(H)(8), issue subpoenas, R.C. 4117.02(H)(3), determine the appropriate bargaining unit, R.C. 4117.06(A), direct, conduct, and certify the results of representation elections, R.C. 4117.07, adjudicate charges of unfair labor practices, R.C. 4117.12, administer dispute resolution procedures, R.C. 4117.14, and determine whether a strike is authorized, R.C. 4117.23. In short, the jurisdiction conferred on the board by the General Assembly is so extensive, self-contained and all-encompassing as to warrant the conclusion that it is likewise exclusive, except where otherwise specified.[3] Thus, the intervention of a court, except where *expressly* permitted, constitutes a usurpation of judicial powers. *Winter, supra.*

The procedure envisioned by the legislature in representation elections is clear. First, the employees choose an exclusive representative for purposes of collective bargaining. This may be accomplished in several ways, the most typical of which is by election. Larson, Bumpass, Ashmus & Ward, Public Sector Collective Bargaining: The Ohio System (1984) 24. A petition for such an election may be filed by employees, by an individual or organization acting on their behalf, or by the employer. Upon the filing of such a petition, SERB, if it has reasonable cause to find an existing question of representation, will conduct a hearing. If, after the hearing, SERB determines that such a question exists, an election will be ordered. R.C. 4117.07(A). SERB supervises the conduct of the election according to its own rules, and certifies the entity which receives a majority of the valid ballots cast as the exclusive representative of the bargaining unit. R.C. 4117.07(C)(3). At this point, a dissatisfied employer may file objections to the election. Ohio Adm. Code 4117-5-10. If SERB rejects this challenge, the employer may seek indirect appeal by refusing to bargain with the exclusive representative, await the inevitable charge of unfair labor practice, and raise the alleged invalidity of the election as a defense. In the latter case, if SERB finds that the employer has engaged in an unfair labor practice, that order is appealable to the court of common pleas. R.C. 4117.13(D).

This restriction of the right of appeal in representation election matters is neither unfair nor illogical. In examining the similar design of the federal law, courts have recognized that the underlying purpose of this restriction is "to avoid dilatory tactics which would postpone the commencement of bargaining when the employer really had no substantial objections to the conduct of the election other than a desire to delay bargaining as long as possible." *Boire* v. *Miami Herald Pub.*

---

[3] See R.C. 4117.12(C), 4117.13(D), 4117.15(A), 4117.16(A) and 4117.23(B)(3).

*Co.* (C.A. 5, 1965), 343 F. 2d 17, 20. See, also, *Boire* v. *Greyhound Corp.* (1964), 376 U.S. 473, 476-479; *Groendyke Transport, Inc.* v. *Davis* (C.A. 5, 1969), 406 F. 2d 1158, 1163.

Clearly, the General Assembly did not intend that public employers could appeal a SERB order certifying an organization as the exclusive representative of a public employee bargaining unit. There can be no doubt that when the General Assembly enacted R.C. Chapter 4117, it meant the Act to be an efficient and practical means for facilitating the bargaining process and aiding in the resolution of disputes. Piecemeal appeals such as that allowed today will cripple the bargaining process beyond rehabilitation. With the Act robbed of its efficacy on interminable delays and uncertainty, the legislature's intentions will never be realized.

The delay occasioned by repeated legal challenges to election proceedings can, of course, be extreme. For example, in *Ohio Historical Society* v. *State Emp. Relations Bd.* (June 30, 1988), Franklin App. Nos. 87AP-1179 and 87AP-1230, unreported, motion to certify allowed (1988), 39 Ohio St. 3d 716, ____ N.E. 2d ____, it was noted that the employees filed an election petition in May 1984, which was contested by the employer, the Ohio Historical Society. When SERB rejected the argument that the Society was not a public employer, the Society appealed to the Court of Common Pleas of Franklin County. The Society also filed a declaratory judgment action in that court, seeking a declaration that it was not a public employer. That action was dismissed. By the time the court of appeals issued a decision on June 30, 1988, over four years had passed since the filing of the petition, and no election had yet been held. Surely this is not the expeditious, orderly disposition envisioned by the General Assembly. In-

stead, our legislators intended to provide public employers and employees with a prompt hearing before a body with expertise in the area of public employment relations.

One of the primary objectives of the Act was to reduce the number of public sector work stoppages in Ohio. Prior to the passage of the Act, this state experienced one of the worst records in the nation with regard to the frequency of strikes by public employees, even though the Ferguson Act, then in effect, outlawed such actions. In 1980, Ohio had sixty such strikes — the third highest public employee strike rate in the country. Note, S. 133: Ohio's Public-Sector Collective-Bargaining Framework (1984), 9 U. Day. L. Rev. 583, 595. Between 1973 and 1980, there were four hundred twenty-eight public sector strikes in this state, an average of over fifty a year. *State, ex rel. Dayton Fraternal Order of Police Lodge No. 44,* v. *State Emp. Relations Bd.* (1986), 22 Ohio St. 3d 1, 5, 22 OBR 1, 4, 488 N.E. 2d 181, 185.

A comparison of these alarming numbers with the statistics since the passage of R.C. Chapter 4117 shows a remarkable change. In the *two years* following the passage of the Act, there was a total of *nine* strikes. Sharpe & Tawil, Fact-Finding in Ohio: Advancing the Role of Rationality in Public Sector Collective Bargaining (1987), 18 U. Tol. L. Rev. 283, 301. Obviously, the Act is enjoying a phenomenal success.

Of course, there will be those who say that this success has come at too high a price. Some of the "costs" most often cited are the reduced autonomy of municipalities and other political subdivisions, which may no longer unilaterally dictate many contract terms, and the allegedly increased budget burden in the form of higher employee salaries, etc. Those who com-

plain that these costs outweigh the benefits of the Act would do well to remember the high price exacted by conditions existing before its passage. The financial losses suffered by cities due to lost work days were no doubt monumental. The potential for such losses has been drastically curtailed by the adoption of the Act. Surely the concessions which collective bargaining may require from public employers are not too high a price to pay for ending the strike epidemic. In practical terms, these concessions will mean that the people of this state will no longer face the disruptions and hardship caused by frequent work stoppages in education, public transportation, garbage collection, police and fire protection, and other vital services. The public coffers will no longer be drained by incessant strikes, and the public employees who might have resorted to a strike in the past will not have to suffer the personal deprivations such actions incur. Public employees who previously had to engage in "collective begging" now are accorded rights of "collective bargaining." In short, everyone benefits from the success of the Act.

However, I now fear that the Act's success will be short-lived. If collective bargaining is permitted to be repeatedly disrupted by scattershot appeals such as the one allowed today, the entire process will disintegrate and the noble purposes of the Act will be frustrated.

Such a result was avoided when the Act managed to survive the first wave of attacks in *State, ex rel. Dayton Fraternal Order of Police* and *Kettering* v. *State Emp. Relations Bd.* (1986), 26 Ohio St. 3d 50, 26 OBR 42, 496 N.E. 2d 983. Today's decision, however, attempts to cut the heart right out of the body of the Act. If this occurs, it will indeed be unfortunate and possibly even disastrous.

Accordingly, I would reverse the judgment of the court of appeals and reinstate the order of the trial court dismissing this appeal.

SWEENEY and H. BROWN, JJ., concur in the foregoing dissenting opinion.