**SERB**

v.

**Warren County Sheriff**

*[Cite as 5 AOA 361]*

*Case No. CA89-02-013*
*Warren County, (12th)*
*Decided July 9, 1990*

*Anthony J. Celebrezze, Jr., Ohio Attorney General, Barbara A. Serve, State Office Tower, 17th Floor, 30 E. Broad Street, Columbus, Ohio 43266-0410, for State Employment Relations Board.*

*Bruce E. Pence and William O. Puncer, Logothetis & Pence, 111 W. First Street, Suite 1100, Dayton, Ohio 45402-1156, for Corrections, Law Enforcement and Safety Employees of Ohio.*

*Paul A. Berninger and Mark R. Fitch, Wood & Lamping, 2500 Cincinnati Commerce Center, 600 Vine Street, Cincinnati, Ohio 45202-2409, for Warren County Sheriff.*

JONES, P.J.

This is an appeal and cross-appeal of a common pleas court decision which affirmed, with modifications, an opinion and reinstate-ment order of the State Employment Relations Board ("SERB").

In late 1983 and early 1984, various department employees of the Warren County Sheriff ("sheriff") began organizing activities on behalf of several unions after Ohio's Public Employee Collective Bargaining Act, R.C. Chapter 4117, was signed into law. Deputy William Sulfsted, who began working for the sheriff as a road deputy in 1977, actively campaigned for the Corrections, Law Enforcement and Safety Employees of Ohio, Teamsters Local Union No. 740 ("Teamsters") to be the exclusive bargaining representative for department employees.

Although Sheriff Robert Dalton accepted the inexorable unionization of department employees, he personally preferred representation by a union other than the Teamsters. Beginning in May 1984, and continuing throughout the summer, a series of events involving Sulfsted occurred which the sheriff characterized as insubordination and violation of department rules and regulations by Sulfsted while Sulfsted described these events as a campaign by the sheriff to discredit him for his union activities and support the Teamsters. These incidents culminated in a predisciplinary hearing on August 2, 1984, which resulted in a recommendation that Sulfsted be disciplined for conduct unbecoming an officer. The following day, Sheriff Dalton imposed a two day suspension to be served on August 4 and 5, 1984. At the conclusion of the August 2 hearing, Sulfsted was served with notice of another predisciplinary hearing on additional charges scheduled for August 6, 1984. This hearing was continued to August 7 upon request by Sulfsted's attorney.

The August 7, 1984 hearing involved charges against Sulfsted for insubordination, neglect of duty, and numerous other violations of department regulations. The following day, the sheriff issued a removal order which was

served upon Sulfsted. On August 15, 1984, the Teamsters filed an unfair labor practice charge on behalf of Sulfsted, charging the sheriff with violations of R.C. 4117.11(A) (1) and (3).[1]

The Teamsters specifically alleged that the August 7 hearing and August 8 discharge were designed to "discriminate against [Sulfsted] because of [his] support for and activity on behalf of the Teamsters." On August 9, Sulfsted appealed the removal order to the State Personnel Board of Review ("SPBR").

Prior to a scheduled October 18, 1984 hearing before SPBR, the Warren County Prosecutor advised the sheriff to withdraw the charges and rescind the removal order because of a merger and bar problem involving the disciplinary action for those charges heard on August 7, 1984.[2] Consequently, the sheriff withdrew the suspension and reinstated Sulfsted, who returned to work on October 24, 1984. During the period between Sulfsted's removal and reinstatement, he was employed by the Teamsters. During this time, he also began publicly criticizing the sheriff's department to the media.

After Sulfsted was reinstated, the sheriff purportedly continued to "harass" Sulfsted for his support of the Teamsters as reflected by threats from some department employees to withhold back up assistance for Sulfsted. At the same time, Sulfsted was also the subject of an internal affairs investigation for allegedly violating a department directive prohibiting deputies from "working the polls" during election day on November 6, 1984. This investigation stemmed from an incident involving Sulfsted's participation in the distribution of campaign literature for Richard Jones, Dalton's opponent for the position of sheriff during the November 6, 1984 election.

Sulfsted began taking sick leave on November 9, 1984, for stress therapy and remained on sick leave until January 3, 1985, when his physician indicated Sulfsted was recovered and physically fit to return to work. While on sick leave, Sulfsted's watch commanders gave him low scores on his 1984 annual evaluation.

Sulfsted returned to work on January 4, 1985. On January 8, Sulfsted received his 1984 performance evaluation and two reprimands: one for insubordination to a superior during a November 9 meeting and one for the election day distribution of campaign literature. On January 10, Sulfsted submitted a written request for a three month unpaid leave of absence without specifying any reason for the request. The sheriff denied the request that same date indicating the lack of available personnel for assignment to Sulfsted's position. On January 17, 1985, Sulfsted submitted a written resignation which read:

"Because of the extra stress I have encountered in recent months at the Warren County Sheriff's Department, I hereby resign my position as Deputy Sheriff, effective January 17, 1985."

On January 15, 1986, Sulfsted filed a request for reinstatement to his position as a road deputy. On January 21, 1986, the sheriff denied this request. Sulfsted then filed an appeal with SPBR, claiming he was entitled to mandatory reinstatement since his separation was due to injury or physical disability. SPBR held hearings and in May 1986, rejected Sulfsted's claim.

Thereafter, Sulfsted pursued the unfair labor practice charge which had been filed nearly two years earlier. On October 9, 1986, SERB found probable cause to believe that the sheriff violated R.C. 4117.11(A) (1) and (3), and directed that a complaint be issued pursuant to R.C. 4117.12.

Following a full hearing and briefing on the contested issues, a hearing officer issued a report which included fifty-six separate findings of fact, conclusions of law, and recommendations. The hearing officer found that Sulfsted was disciplined for his union activities and support of the Teamsters. According to the hearing officer, these disciplinary actions constituted "discrimination" by the sheriff. Although Sulfsted voluntarily resigned in 1985, the hearing officer determined that the resignation amounted to a "constructive discharge" resulting from the sheriff making working conditions so difficult or unpleasant for Sulfsted so as to force him to resign. According to the hearing officer, the sheriff committed an unfair labor practice by discriminating against and constructively discharging Sulfsted in violation of R.C. 4117.11(A) (1) and (3). The hearing officer recommended that Sulfsted be reinstated with full back pay from January 18, 1985. SERB voted to accept the hearing officer's report and recommendation with one slight modification to the findings of

fact. SERB issued its reinstatement order on September 28, 1988.

The sheriff appealed to the Warren County Court of Common Pleas which affirmed SERB's finding of a constructive discharge and upheld the reinstatement order. Although the common pleas court was not in total agreement with some of the facts as found by the hearing officer and adopted by SERB, it nevertheless determined that SERB's factual conclusions were supported by sufficient evidence. The common pleas court did, however, modify the reinstatement, reducing Sulfsted's back pay from four to two years.

The sheriff timely appealed the common pleas court decision, and submits a single assignment of error which reads, as follows:

"The Court of Common Pleas Erred To The Prejudice Of Appellants By Failing To Review The Legal Conclusions Of The State Employment Relations Board."

The Teamsters and SERB cross-appealed the common pleas court order with both challenging the lower court's modification of the back pay remedy imposed by SERB.

The primary issue raised in the sheriff's appeal is whether the common pleas court failed to follow the requirements of R.C. 119.12 by not determining whether the SERB decision was "in accordance with law."

The sheriff contends that the common pleas court, in reviewing a SERB order, must adhere to the standard of administrative review set forth in R.C. 119.12. R.C. 119.12 permits the court to affirm the order of an administrative agency if it finds "*** that the order is supported by reliable, probative, and substantial evidence *and is in accordance with law."* (Emphasis added.) R.C. 119.12 is generally applicable to SERB adjudications. See *South Community, Inc. v. State Emp. Relations Bd.* (1988), 38 Ohio St. 3d 224; R.C. 4117.02(M).

Inasmuch as the case at bar involves the appeal of an unfair labor practice charge, however, the standard of review is that established by R.C. 4117.13 rather than the general standard enunciated in R.C. 119.12 and made applicable to SERB determinations through R.C. 4117.02(M). See *Lorain Edn. Assn. v. Lorain City School Dist. Bd. of Edn.* (1988), 46 Ohio St. 3d 12, 15, footnote 1; and *Ohio Historical Society v. State Emp. Relations* Bd. (1990), 48 Ohio St. 3d 45, 46.

Charges involving unfair labor practices are first heard before SERB, one of its members, or a hearing officer. R.C. 4117.12(B) (1). The particular board member or hearing officer then makes findings of fact and conclusions of law and formulates recommendations to SERB. R.C. 4117.12(B) (2). SERB then reviews the matter and issues its decision and order. R.C. 4117.12(B) (3). Upon finding that an unfair labor practice has occurred, SERB may formulate an appropriate solution to the matter. After SERB issues a final order, any aggrieved party may appeal to the appropriate court of common pleas. R.C. 4117.13(D).

In *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St. 3d 257, the Ohio Supreme Court held that pursuant to R.C. 4117.13(D), the common pleas court's standard of review of a SERB decision on an unfair labor practice charge is whether there is substantial evidence to support that decision. Our role, as a court of appeals, is to determine only if the trial court has abused its discretion. Absent an abuse of discretion by the common pleas court, we must affirm the common pleas court's judgment. *Id.* at 260, 261.

The trial court thoroughly reviewed the evidence before it and determined that the SERB order was supported by substantial evidence. In doing so, the common pleas court complied with the dictates of R.C. 4117.13(D). *Lorain City Bd. of Edn., supra.* Accordingly, the common pleas court's failure to apply R.C. 119.12 to its review of the SERB decision does not warrant a reversal. There is, however, an independent basis which we believe compels us to find an abuse of discretion pursuant to our appellate role under R.C. 4117.13(D).

An unfair labor practice charge filed with SERB must include, among other things, "[a] clear and concise statement of the facts constituting the alleged unfair labor practice." Ohio Adm. Code 4117-7-01(B) (3). According to the August 15, 1984 charge filed by the Teamsters, the alleged unfair labor practice was the sheriff's disciplinary hearing against and "discharge" of Sulfsted on August 7 and 8, 1984. The sheriff's August 8 removal order referred to conduct by Sulfsted, all of which occurred on or before July 27, 1984, conduct for which Sulfsted could not be disciplined because of his August 4 and 5 suspension and the SPBR's applicable merger and bar rule. Thus, Sulfsted's October 1984 reinstatement

essentially eliminated those specific facts and issues -- namely, the August 8 removal and any associated conduct or action by Sulfsted which preceded and precipitated the removal -- which resulted in the August 15, 1984 unfair labor charge.

SERB's investigation of unfair labor practice charges for probable cause determinations is limited to the facts and issues raised in the charge and any facts or issues reasonably related to the charge. Ohio Adm. Code 4117-7-02(A). Since Sulfsted returned to work in October 1984, at which time he was presumably physically fit to assume the duties of his position, any "unfair labor practices" by the sheriff, i.e., disciplinary action, which made working conditions so difficult and unpleasant for Sulfsted and created "the extra stress [he] encountered in recent months" causing him to resign in January 1985, must have occurred subse- quent to Sulfsted's October 1984 reinstatement. In the case at bar, it took twenty-six months from the filing of the Teamsters' s charge for SERB to find probable cause. A charge must be filed with SERB within ninety days after the alleged unfair labor practice was committed. Ohio Adm. Code 4117-7-01(A). This suggests that unfair labor practice charges should be promptly filed with SERB and handled by SERB in an equally expeditious manner.

Although the General Assembly vested SERB "*** with broad authority to administer and enforce R.C. Chapter 4117 ***" *Lorain City Bd. of Edn., supra,* at 260, it seems incongruous that an unfair labor practice charge should be permitted to be filed against an employer and remain subject to investigation and subsequent action by SERB on a perpetual basis. If the sheriff's conduct following Sulfsted's reinstatement was so egregious to amount to a constructive discharge, such could have and should have formed the grounds for a separate unfair labor practice charge. Such conduct should not, however, be used to substantiate a violation of R.C. 4117.11 based upon the August 15, 1984 unfair labor practice charge. We accordingly conclude that the common pleas court abused its discretion by not setting aside the SERB order. The sheriff's assignment of error is well-taken and is hereby sustained.

In their cross-appeal, the Teamsters and SERB contend that the common pleas court erred in modifying the back pay remedy im-posed by SERB. SERB ordered that Sulfsted be reinstated to his position as of January 17, 1985, the date of his resignation, and that he receive back pay to that date. The trial court reduced the award of back pay by two years, noting that SERB did not 'issue its finding of probable cause until October 1986, nearly twenty-one months after Sulfsted's tendered resignation. The complaint itself was not filed until another six months elapsed. SERB conducted an evidentiary hearing in September 1987, yet did not issue its final order until nearly a year later. According to the common pleas court, the principal reasons for the delay were Sulfsted's initial failure to seriously pursue his claim and several postponements and continuances which SERB granted at Sulfsted's request. The common pleas court concluded that two rather than four years would have been a more ample time to fully litigate and complete the proceedings. Any additional delay could be primarily contributed to either Sulfsted or SERB.

Given our disposition of the sheriff's assignment of error, we hereby find that the common pleas court's modification of the pay back period did not constitute an abuse of discretion. Accordingly, the assignments of error presented by the Teamsters and SERB are also overruled.

*Judgment reversed and remanded.*

HENDRICKSON, J., concurs.

YOUNG, J., concurs in part and dissents in part.

YOUNG, J., concurring in part and dissenting in part.

While I agree that an unfair labor practice charge should not remain active on a perpetual basis, I do not agree that the action of the court of common pleas rose to an abuse of discretion. I would overrule the sheriff's assignment of error.

I concur with the majority's finding that the modification of the back pay period did not constitute an abuse of discretion.

---

[1] R.C. 4117.11 provides, in part, for the following:
"(A) It is an unfair labor practice for a public employer, its agents, or representatives to:

'(1) Interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Chapter 4117. of the Revised Code or an employee organization in the selection of its representative for the purposes of collective bargaining or the adjustment of grievances;
'***

'(3) Discriminate in regard to hire [hiring] or tenure of employment or any term or condition of employment on the basis of the exercise of rights guaranteed by Chapter 4117. of the Revised Code. ***"

₂ Under Ohio Adm. Code 124-3-05(A);

"All incidents, which occurred prior to the incident for which a non-oral disciplinary action is being imposed of which an appointing authority has knowledge and for which an employee could be disciplined are merged into the non-oral discipline imposed by the appointing authority. ***"