Jim Petro, Attorney General, and Sharon A. Jennings, Assistant Attorney General, for appellee.

THE STATE EX REL. MINISTERIAL DAY CARE ASSOCIATION, APPELLANT, *v.* ZELMAN, SUPT., APPELLEE.

[Cite as *State ex rel. Ministerial Day Care Assn. v. Zelman,* 100 Ohio St.3d 347, 2003-Ohio-6447.]

(No. 2003–1024—Submitted October 20, 2003—Decided December 24, 2003.)

**Per Curiam.**

{¶ 1} Appellant, Ministerial Day Care Association ("Ministerial"), is a nonprofit organization that receives federal and state funds to provide child-development programs to low-income families in Cuyahoga County, Ohio. Ministerial has provided educational daycare services to children of low-income families under the Head Start Act. See Section 9831 et seq., Title 42, U.S.Code. The purpose of the Head Start Act is "to promote school readiness by enhancing the social and cognitive development of low-income children through the provision, to low-income children and their families, of health, educational, nutritional, social, and other services that are determined, based on family needs assessments, to be necessary." Section 9831, Title 42, U.S.Code. The state appropriates additional funds for Head Start agencies. See, e.g., R.C. 3301.31.

{¶ 2} Ministerial has also provided food and nutrition services under the National School Lunch Act, as amended, Section 1751 et seq., Title 42, U.S.Code, the Child Nutrition Act, as amended, Section 1771 et seq., Title 42, U.S.Code, and the regulations governing the Child and Adult Care Food Program ("CACFP"), Section 226.1 et seq., Title 7, C.F.R.

Head Start Funds

{¶ 3} In April 2001, the Ohio Department of Education ("ODE") informed Ministerial that its tentative allocation of state Head Start funds was $7,850,904 for fiscal year 2002 and $8,007,010 for fiscal year 2003. ODE specified that the award was based on a "per pupil amount" and that the amount was "tentative and subject to change."

{¶ 4} In May 2001, Ministerial submitted its continuing grant application for Head Start funds for fiscal years 2002 and 2003 to ODE based upon the tentative allocation. In its application, Ministerial assured appellee, Superintendent of Public Instruction Susan Tave Zelman, that it would comply with applicable law and its application representations and that its failure to comply with these representations could result in a reduction of the award:

{¶ 5} "The applicant hereby assures the Superintendent of Public Instruction that:

{¶ 6} "A. Applicant shall operate this program in accordance with applicable federal Head Start regulations, including: the Head Start Act; Code of Federal Regulations (CFR) 45 Parts 1301–1306, and 1308; all applicable statutory provisions and rules adopted by the State Board of Education (including for Head Start programs Ohio Revised Code, Section 3301.311); and in accordance with the representations in this application. * * *

{¶ 7} "* * *

{¶ 8} "N. Applicant acknowledges that failure to comply with these assurances or the requirements of the Amended Substitute House Bill in effect for this award * * * may result in an adjustment, reduction or termination of this award prior to the end of the award period."

{¶ 9} From May 7–11, 2001, ODE reviewed Ministerial's Head Start program on-site. Based upon this review, ODE concluded that the program was deficient because of (1) inadequate record keeping, (2) a significant number of ineligible children and families in the program, and (3) failure to provide comprehensive Head Start services to all children.

{¶ 10} Because of these deficiencies, ODE notified Ministerial in June 2001 that it would not continue its Head Start funding at the same level. Instead, ODE would fund Ministerial based only on the number of eligible children, which resulted in a Head Start allocation of $2,248,450 for fiscal year 2002. In July 2001, ODE informed Ministerial that its Head Start award had been adjusted downward and would be $2,166,425 for fiscal year 2002 and $2,166,425 for fiscal year 2003.

{¶ 11} In June 2002, the State Auditor issued a special audit report of Ministerial's Head Start program for the period from July 1, 1997, to September

30, 2000. The Auditor concluded that during fiscal year 1998, Ministerial had received funding for more children than it could document were enrolled in its Head Start program and had failed to pay all the funds to which private providers were entitled. The Auditor issued findings for recovery against Ministerial for approximately $3.8 million.

## CACFP Funds

{¶ 12} In 1996, Ministerial entered into a "permanent agreement" with ODE to provide CACFP services. The agreement provided that the "provisions automatically renew each year contingent on state agency approval of a complete and correct Application or Application Renewal submitted by the sponsor." Ministerial expressly agreed to "[c]omply with and meet all responsibilities and requirements set forth in 7 CFR, Part 226, Child and Adult Care Food Program Regulations" and "[c]laim reimbursement only for meals served to enrolled and eligible CACFP participants." ODE agreed to "[r]eimburse [Ministerial] for meals * * * based on the percentage of participants enrolled as free, reduced, and paid enrollmen[t]." According to Ministerial, this agreement was renewed in 1999.

{¶ 13} From September 26 through September 29, 2000, ODE reviewed Ministerial's administration of CACFP funds. In November 2000, ODE notified Ministerial of serious deficiencies in its program, including inflated meal counts and the provision of meals to ineligible children. ODE ordered Ministerial to immediately correct the deficiencies and to issue a corrective action plan by December 18, 2000. In its notice, ODE informed Ministerial that the designation of serious deficiency could not be appealed but that Ministerial could appeal other findings.

{¶ 14} Due to the State Auditor's June 2002 special audit on Ministerial's Head Start program, ODE requested a plan for repayment of the amount Ministerial was overpaid from July 1, 1997, through September 30, 2000. Ministerial's application for participation in CACFP has been denied until it submits a plan for repayment.

## Common Pleas Court Case

{¶ 15} In February 2002, Ministerial filed a complaint in the Cuyahoga County Court of Common Pleas against several defendants, including ODE and Zelman. Ministerial sought a declaratory judgment that ODE's termination and reduction of its Head Start funding was unconstitutional. Ministerial further requested that ODE pay Ministerial the over $15 million it had been tentatively awarded in April 2001 for fiscal years 2002 and 2003. Ministerial also requested that the defendants be enjoined from illegal conduct involving threats and harassment. Ministerial voluntarily dismissed this common pleas court case in November 2002.

Court of Appeals Case

{¶ 16} On November 29, 2002, Ministerial filed a complaint in the Court of Appeals for Cuyahoga County against Zelman and the State Auditor. Ministerial requested a writ of mandamus ordering Zelman and the State Auditor "(1) to transfer to [Ministerial] $11 million in outstanding CACFP and Head Start funds, (2) to restore its rightful amount for the remainder of SFY 2003 as originally allocated by ODE in its letter of April 17, 2001, and [Ministerial's] continuation grant application, (3) to recognize [Ministerial's] rightful status as a Head Start provider, with a right to continue service (and receiving state Head Start funding for) at least 1,754 children, directly as well as through its private child care partners and (4) to recognize [Ministerial's] rightful status as a CACFP provider to provide food and nutritional services to children under CACFP and to receive timely reimbursement therefore." Zelman and the State Auditor moved to dismiss Ministerial's complaint.

{¶ 17} In May 2003, after Ministerial had voluntarily dismissed the Auditor from the case, the court of appeals granted Zelman's motion and dismissed Ministerial's complaint.

{¶ 18} In its appeal as of right, Ministerial asserts that the court of appeals erred in dismissing its complaint for a writ of mandamus. In order to be entitled to the requested writ, Ministerial had to establish a clear legal right to continued recognition as an appropriate Head Start and CACFP provider and to the transfer of over $11 million in additional Head Start and CACFP funds, a corresponding clear legal duty on the part of Zelman to so recognize Ministerial and to transfer those funds, and the lack of an adequate legal remedy. *State ex rel. Commt. for the Referendum of Ordinance No. 3844–02 v. Norris,* 99 Ohio St.3d 336, 2003-Ohio-3887, 792 N.E.2d 186, ¶ 11.

{¶ 19} Under R.C. 3301.13, ODE is the "administrative unit and organization through which the policies, directives, and powers of the state board of education and the duties of the superintendent of public instruction are administered by such superintendent as executive officer of the board." As the Superintendent of Public Instruction, Zelman executes her duties and the powers of the State Board of Education through ODE.

Head Start Funds

{¶ 20} Ministerial claims that once the court of appeals determined that Ministerial had participated in the Head Start program during the pertinent period, it was automatically entitled to funding it had received for the previous award period.

{¶ 21} Ministerial's claim is devoid of merit. Ministerial expressly represented in its grant application for Head Start funds that its failure to comply with

applicable law concerning the Head Start program "may result in an adjustment, reduction or termination of this award prior to the end of the award period." By reducing Ministerial's tentative award for fiscal years 2002 and 2003 due to its failure to comply with applicable Head Start requirements, ODE merely did what Ministerial had acknowledged that it could. In addition, Ohio Adm.Code 3301–69–07(B)(5)(b) permits ODE to review the status of an agency in meeting Head Start performance standards in the continuation grant process.

{¶ 22} Moreover, insofar as Ministerial seeks a judgment declaring its status as a Head Start provider, neither this court nor the court of appeals has original jurisdiction over claims for declaratory judgment. *State ex rel. Satow v. Gausse–Milliken*, 98 Ohio St.3d 479, 2003-Ohio-2074, 786 N.E.2d 1289, ¶ 13; *State ex rel. Shimko v. McMonagle* (2001), 92 Ohio St.3d 426, 430, 751 N.E.2d 472.

## CACFP Funds

{¶ 23} Ministerial next asserts that the court of appeals was compelled to grant the writ ordering the CACFP funds once it had held that Ministerial was a participant in the program. Ministerial cites Section 226.11, Title 7, C.F.R., R.C. 3313.813(B), and its agreement with ODE in support of its claim.

{¶ 24} These provisions, however, do not confer a clear legal right upon Ministerial to the CACFP funds or impose a corresponding clear legal duty on Zelman to provide them. Ministerial did not provide any credible allegation that its agreement with ODE was renewed beyond 1999. In fact, even if the agreement had been renewed, Ministerial specifically agreed to claim reimbursement only for meals served to "enrolled and eligible CACFP participants." Therefore, once ODE determined that Ministerial requested funds for ineligible participants, Ministerial could not seek reimbursement. Nothing in Section 226.11, Title 7, C.F.R. or R.C. 3313.813(B) prevents ODE from refusing to reimburse an agency for funds to which it is not entitled under CACFP and the parties' agreement.

{¶ 25} Furthermore, Ministerial could have instead filed a complaint for declaratory judgment and injunctive relief. In fact, Ministerial essentially concedes the adequacy of this alternate remedy by arguing that this case "is very similar to" *Cleveland City School Dist. Bd. of Edn. v. Gilligan* (1974), 38 Ohio St.2d 107, 67 O.O.2d 108, 311 N.E.2d 529, a case that was instituted as an action for injunctive and declaratory relief in a common pleas court rather than as an action for an extraordinary writ.

{¶ 26} In addition, insofar as Ministerial requests a judgment declaring its status as a CACFP provider, the court of appeals lacked jurisdiction over the claim. *Shimko*, 92 Ohio St.3d at 430, 751 N.E.2d 472.

## Conclusion

{¶ 27} Based on the foregoing, the court of appeals did not err in dismissing Ministerial's mandamus complaint. Therefore, we affirm the judgment of the court of appeals.

Judgment affirmed.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

---

Zukerman, Daiker & Lear Co., L.P.A., Larry W. Zukerman and S. Michael Lear, for appellant.

Jim Petro, Attorney General, James G. Tassie and Rachelle J. Peloquin, Assistant Attorneys General, for appellee.