STATE EX REL. OHIO CIVIL SERVICE EMPLOYEES ASSOCIATION,
AFSCME, LOCAL 11, AFL–CIO, APPELLEE, v. STATE
EMPLOYMENT RELATIONS BOARD, APPELLANT.

[Cite as *State ex rel. Ohio Civ. Serv. Employees Assn., AFSCME, Local
11, AFL–CIO v. State Emp. Relations Bd.,*
104 Ohio St.3d 122, 2004-Ohio-6363.]

(No. 2003–1010—Submitted March 30, 2004—Decided December 15, 2004.)

---

MOYER, C.J.

{¶ 1} This appeal tests the validity of an amendment to R.C. 3318.31, which the State Employment Relations Board ("SERB") had applied to exclude certain employees from the collective-bargaining process. Because we conclude that the amendment to R.C. 3318.31 violated the one-subject rule of the Ohio Constitution, we affirm the court of appeals' judgment granting the Ohio Civil Service Employees Association ("OCSEA") a writ of mandamus.

I

{¶ 2} Pursuant to its collective-bargaining agreement with the state of Ohio, relator-appellee, OCSEA, is the exclusive bargaining representative for certain collective-bargaining units in Ohio. In 2001, OCSEA attempted to reach an agreement with the state to include within those units the employees of the Ohio School Facilities Commission ("OSFC"). When these efforts proved unsuccessful, OCSEA filed three petitions for amendment of certification and three petitions for clarification of a bargaining unit with respondent-appellant, SERB.

{¶ 3} While the six petitions were pending before SERB, the Ohio General Assembly enacted Am.Sub.H.B. No. 405. This legislation, which SERB refers to as a "budget corrections bill," contains numerous provisions meant to balance and stabilize Ohio's operating budget. Among its provisions, Am.Sub.H.B. No. 405 authorized Ohio's participation in a multistate lottery, R.C. 3770.02, transferred "rainy-day" and tobacco funds to the General Revenue Fund, 2001 HB 405, Sections 29 and 32, and addressed various other budgetary programs. All told, Am.Sub.H.B. No. 405 amended, enacted, or repealed over 90 sections of the Revised Code and enacted 44 uncodified provisions of law.

{¶ 4} Am.Sub.H.B. No. 405 also amended R.C. 3318.31, which governs the powers and responsibilities of OSFC. As amended, R.C. 3318.31(B) provides that "[t]he employees of [OSFC] shall be exempt from Chapter 4117. of the Revised Code and shall not be public employees as defined in section 4117.01 of the Revised Code." Relying on this newly enacted amendment, the state filed with SERB a motion to dismiss the six petitions. SERB granted the state's motion, reasoning that "Am. Sub. H.B. No. 405 is clear. * * * The employees in question are exempt and are not public employees as defined in Ohio Revised Code 4117.01. No issues remain that warrant a hearing."[1]

{¶ 5} OCSEA thereafter filed a petition for a writ of mandamus in the Franklin County Court of Appeals, asserting that SERB had improperly dismissed the six petitions and the unfair-labor-practice charge. The magistrate determined that, although OCSEA brought the action in mandamus, the real object of the relief it

---

1. On the same day that the state filed its motion to dismiss, OCSEA filed with SERB an unfair-labor-practice charge, alleging that the state had committed a series of unfair labor practices in violation of R.C. 4117.11(A)(1), (2), and (5). SERB also dismissed the charge that the state had committed unfair labor practices, finding that the "[i]nformation gathered during the investigation reveals the Charged Party was seeking confirmation of the intent of the legislation, which is not a violation of the statute." The court of appeals denied OCSEA's request for a writ ordering SERB to vacate its order dismissing the unfair-labor-practice charge and to find probable cause to believe that the state had committed an unfair labor practice. OCSEA did not appeal the court of appeals' judgment, and, therefore, the issue is not before us.

sought was a declaration that the amended version of R.C. 3318.31 was unconstitutional. Reasoning that the court of appeals does not have original jurisdiction over actions for declaratory judgment, the magistrate recommended that the court of appeals dismiss the case.

{¶ 6} After OCSEA filed objections to the magistrate's decision, the court of appeals, despite adopting the magistrate's findings of fact, rejected the magistrate's conclusions of law. Specifically, the court of appeals determined that an action for declaratory judgment would not provide OCSEA with a plain and adequate remedy at law. As a result, it determined that OCSEA's petition for a writ of mandamus was the appropriate vehicle by which to challenge SERB's dismissal order.

{¶ 7} Having rejected the magistrate's recommendation to dismiss the case, the court of appeals addressed the constitutionality of the bill that had amended R.C. 3318.31. The court observed that "[t]he amendment to R.C. 3318.31 exempting OSFC employees from the provisions of the Public Employees Collective Bargaining Act does not share a common purpose with and has no discernible practical or rational relationship to the other provisions in the enacted bill." *State ex rel. Ohio Civ. Serv. Employees Assn. v. State Emp. Relations Bd.*, 152 Ohio App.3d 551, 2003-Ohio-2021, 789 N.E.2d 636, ¶ 29. Accordingly, the court held that Am.Sub.H.B. No. 405 violates the "one-subject rule" of the Ohio Constitution and issued a writ of mandamus ordering SERB to reinstate the six petitions within 30 days.

{¶ 8} The cause is now before this court upon SERB's appeal as of right.

## II

{¶ 9} The threshold issue in this case is whether mandamus was the proper vehicle to challenge SERB's dismissal order. The Ohio Constitution confers upon the Supreme Court of Ohio and the Ohio courts of appeals concurrent, original jurisdiction over writs of mandamus—i.e., written orders, in the name of a state or other competent legal authority, that command a public officer or agency to perform an official act. Sections 2 and 3, Article IV, Ohio Constitution; R.C. 2731.01. To be entitled to a writ of mandamus, a relator must demonstrate that (1) the relator has a clear legal right to the relief requested, (2) the respondent is under a clear legal duty to perform the requested act, and (3) the relator has no plain and adequate remedy in the ordinary course of law. *State ex rel. Natl. City Bank v. Bd. of Edn.* (1977), 52 Ohio St.2d 81, 84, 6 O.O.3d 288, 369 N.E.2d 1200.

{¶ 10} The third requirement for mandamus relief—that relators lack a plain and adequate remedy in the ordinary course of law—has recently occasioned some confusion and represents the crux of the initial disagreement between the

parties. OCSEA contends, and the court of appeals agreed, that OCSEA lacked a plain and adequate remedy in the ordinary course of law. SERB, by contrast, argues that OCSEA had two plain and adequate legal remedies: (1) an action for declaratory judgment and (2) an appeal from the SERB order to the court of common pleas. SERB raised the former remedy in the court of appeals; however, it did not raise the latter. "'Ordinarily, reviewing courts do not consider questions not presented to the court whose judgment is sought to be reversed.'" See *State ex rel. Quarto Mining Co. v. Foreman* (1997), 79 Ohio St.3d 78, 81, 679 N.E.2d 706, quoting *Goldberg v. Indus. Comm.* (1936), 131 Ohio St. 399, 404, 6 O.O. 108, 3 N.E.2d 364. We conclude, therefore, that SERB waived the argument that OCSEA had an adequate remedy at law by appealing the dismissal order to the court of common pleas. Accordingly, we limit our threshold inquiry to whether OCSEA had a plain and adequate remedy in an action for declaratory judgment.

{¶ 11} It is well settled that "if the allegations of a complaint for a writ of mandamus indicate that the real objects sought are a declaratory judgment and a prohibitory injunction, the complaint does not state a cause of action in mandamus." *State ex rel. Grendell v. Davidson* (1999), 86 Ohio St.3d 629, 634, 716 N.E.2d 704. Because neither the Supreme Court of Ohio nor the Ohio courts of appeals have original jurisdiction over claims for declaratory judgment, *State ex rel. Ministerial Day Care Assn. v. Zelman*, 100 Ohio St.3d 347, 2003-Ohio-6447, 800 N.E.2d 21, ¶ 22, these courts lack jurisdiction over actions that, although styled in mandamus, actually seek a declaration of rights, status, or other legal relations. *State ex rel. Phillips v. Lorain Cty. Bd. of Elections* (2001), 93 Ohio St.3d 535, 537, 757 N.E.2d 319.

{¶ 12} SERB contends that OCSEA's mandamus action was a disguised request for a declaration that the amendment to R.C. 3318.31 was unconstitutional and, therefore, the court of appeals should have dismissed it for want of jurisdiction. In addition, SERB argues that the availability of an action for declaratory judgment is a plain and adequate remedy at law, thus prohibiting the issuance of a writ of mandamus. In response, OCSEA advances two arguments. First, counsel for OCSEA asserted at oral argument that "there are at least four nonconstitutional grounds upon which this case can be decided in full by a writ of mandamus without need for any other relief, and that's what distinguishes this case from [the declaratory judgment] cases." OCSEA thus urges us to first consider affirming the judgment of the court of appeals on nonconstitutional grounds. OCSEA suggests that if we affirm on such grounds, we need not reach the issue of whether its mandamus action was a disguised action for declaratory judgment. We disagree.

{¶ 13} Actions for declaratory judgment may be predicated on constitutional *or* nonconstitutional grounds. See R.C. 2721.02 (broadly authorizing parties to bring actions for declaratory judgments for a declaration of "rights, status, and other legal relations whether or not further relief is or could be claimed"). That OCSEA advances nonconstitutional theories is, therefore, immaterial to whether it had an adequate remedy at law by way of a declaratory judgment action. The relevant inquiry, rather, is whether OCSEA had a plain and adequate remedy at law by way of an action for a declaratory judgment—no matter the constitutional or nonconstitutional nature of the theories used to obtain that judgment. We thus reject the notion that the instant case is distinguishable from our previously decided declaratory judgment cases simply because OCSEA also raised nonconstitutional arguments.

{¶ 14} Second, OCSEA asserts that it could not have obtained complete relief in an action for declaratory judgment. We considered a similar argument in *State ex rel. Dayton Fraternal Order of Police Lodge No. 44 v. State Emp. Relations Bd.* (1986), 22 Ohio St.3d 1, 22 OBR 1, 488 N.E.2d 181 (*"Dayton FOP"*), in which employees challenged a statute, known as the "Dayton Amendment," that operated to exclude sergeants, lieutenants, captains, and district chiefs of the Dayton Police and Fire Departments from the collective-bargaining process. The Fraternal Order of Police ("FOP") filed a Request for Voluntary Recognition with SERB, seeking certification of a proposed bargaining unit that would include those individuals excluded by the Dayton Amendment. Applying the terms of the Dayton Amendment, SERB dismissed the request.

{¶ 15} On appeal to this court, the FOP sought a writ of mandamus ordering SERB to reinstate its Request for Voluntary Recognition. The FOP argued that the Dayton Amendment applied exclusively to the Dayton Police Department and, consequently, offended the Equal Protection Clause of the United States Constitution and its counterpart in the Ohio Constitution. In considering the threshold issue of whether the FOP had an adequate remedy through an action for declaratory judgment, we reaffirmed the well-settled principle that " 'where declaratory judgment would not be a complete remedy unless coupled with ancillary relief in the nature of mandatory injunction, the availability of declaratory injunction is not an appropriate basis to deny a writ to which the relator is otherwise entitled.' " *Dayton FOP*, 22 Ohio St.3d at 8, 22 OBR 1, 488 N.E.2d 181, quoting *State ex rel. Fenske v. McGovern* (1984), 11 Ohio St.3d 129, 11 OBR 426, 464 N.E.2d 525, paragraph two of the syllabus. Applying this principle, we issued a writ of mandamus ordering SERB to reinstate the petitions, after finding that FOP could not have received a complete remedy unless coupled with a mandatory injunction.

{¶ 16} One scholar has explained the rationale underlying the principle that a declaratory judgment is not always an adequate remedy as follows: "A declaratory action, which merely announces the existence of a duty to be performed, has generally not been deemed as adequate as the writ of mandamus, which compels performance." 1 Antieau, The Practice of Extraordinary Remedies (1987) 300, Section 2.06. Because a mandatory injunction is an extraordinary remedy, it does not constitute an adequate remedy in the ordinary course of the law. *State ex rel. Zupancic v. Limbach* (1991), 58 Ohio St.3d 130, 133, 568 N.E.2d 1206; *State ex rel. Fenske v. McGovern*, 11 Ohio St.3d 129, 11 OBR 426, 464 N.E.2d 525, paragraph one of the syllabus; *State ex rel. Pressley v. Indus. Comm.* (1967), 11 Ohio St.2d 141, 40 O.O.2d 141, 228 N.E.2d 631, paragraph six of the syllabus.

{¶ 17} Applying this principle to the instant case, we conclude that a declaration that Am.Sub.H.B. No. 405 is unconstitutional would not have provided OCSEA with a complete remedy unless coupled with a mandatory injunction. Because SERB had dismissed the six petitions, it would be under no obligation to reinstate the petitions if a trial court held that Am.Sub.H.B. No. 405 was unconstitutional; only a declaratory judgment coupled with a mandatory injunction ordering the reinstatement of the six petitions would provide complete relief. Accordingly, we reject SERB's argument that OCSEA had a plain and adequate remedy in the ordinary course of law by way of an action for declaratory judgment.

{¶ 18} The dissent cites *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 516, 715 N.E.2d 1062 (Moyer, C.J., dissenting) to support the conclusion that relator is essentially seeking a declaratory judgment and prohibitory injunction. The facts in the case at bar, however, are distinguishable from the facts in *Sheward*. In that case, relators had no "true dispute, or controversy, with the individual common pleas judges they [had] named as respondents." Id., 86 Ohio St.3d at 525, 715 N.E.2d 1062 (Moyer, C.J., dissenting). Nor did the relators in *Sheward* allege that the respondents had failed to comply with any duty required of them by law. Id. They instead sought a writ ordering Ohio judges to rule that the entirety of comprehensive legislation contained in Am.Sub.H.B. No. 350 was unconstitutional, both as to existing cases and cases that might arise in the future.

{¶ 19} In the instant case, specific individuals employed by the Ohio School Funding Commission had been affected by the refusal of SERB to entertain their petitions to be recognized as members of a collective-bargaining unit. Unlike in *Sheward*, the relator presented a claim that a specific public entity had failed to perform its clear legal duty to consider specific petitions. The case at bar presents far more than only a " 'general and abstract question, whether an act of the legislature be unconstitutional.' " Id., 86 Ohio St.3d at 525, 715 N.E.2d 1062

(Moyer, C.J., dissenting), quoting *Foster v. Wood Cty. Commrs.* (1859), 9 Ohio St. 540, 543, 1859 WL 29.

{¶ 20} Rather, we have jurisdiction to entertain this cause because the relators seek an order mandating SERB, a public agency, to comply with the affirmative statutory duties required of it by R.C. 4117.07(A) ("When a petition is filed * * * (1) [b]y any employee or group of employees, or any individual or employee organization acting in their behalf, * * * the board shall investigate the petition, and if it has reasonable cause to believe that a question of representation exists, provide for an appropriate hearing").

{¶ 21} The threshold issue having been resolved in favor of OCSEA, we next consider the validity of the amendment to R.C. 3318.31 in Am.Sub.H.B. No. 405.

III

A

{¶ 22} In the court of appeals, OCSEA raised numerous challenges to the application of amended R.C. 3318.31. Among its challenges, OCSEA argued that (1) SERB had applied Am.Sub.H.B. No. 405 retrospectively in violation of R.C. 1.48, which requires the prospective application of statutes unless the General Assembly has expressly stated otherwise, (2) R.C. 4117.10(A) provides that R.C. Chapter 4117 preempts any conflicting law—in this case, the amendment to R.C. 3318.31—except as specified by the General Assembly, (3) pursuant to R.C. 4117.10(A), the collective-bargaining agreement governs the terms and conditions of public employees covered by the agreement and preempts conflicting statutes, and (4) applying R.C. 3318.31(B), as amended by Am.Sub.H.B. No. 405, violates the Due Process and the Retroactivity Clauses of the Ohio Constitution.

{¶ 23} The court of appeals declined to address these arguments. Instead, the court relied exclusively on the one-subject rule of the Ohio Constitution to invalidate the amendment to R.C. 3318.31 in Am.Sub.H.B. No. 405. It is *that* issue that is presented by SERB in this appeal, thus leaving the remaining arguments raised by OCSEA for consideration only if we reverse the court of appeals on the one-subject issue (in which case a remand for review of those arguments might be appropriate).

{¶ 24} We acknowledge that by considering the constitutionality of Am.Sub. H.B. No. 405 before considering OCSEA's nonconstitutional arguments, the court of appeals frustrated the general policy against deciding a case on constitutional grounds without first determining whether it could dispose of the cause on nonconstitutional grounds. *Kinsey v. Bd. of Trustees of Police and Firemen's Disability & Pension Fund of Ohio* (1990), 49 Ohio St.3d 224, 225, 551 N.E.2d

989. Nevertheless, this court generally does not consider issues that the court of appeals did not reach. See *Bowen v. Kil–Kare, Inc.* (1992), 63 Ohio St.3d 84, 89, 585 N.E.2d 384. In accordance with this general practice, we limit our inquiry to whether Am.Sub.H.B. No. 405 violates the one-subject rule of the Ohio Constitution.

## B

{¶ 25} Section 15(D), Article II of the Ohio Constitution provides, "No bill shall contain more than one subject * * *." Added to our constitution in 1851 as part of the Second Constitutional Convention, the one-subject rule has its roots "in the same concerns over the General Assembly's dominance of state government that formed the most significant theme of the Constitution of 1851." *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 495, 715 N.E.2d 1062. Advocates of the one-subject rule sought to impose "concrete limits on the power of the General Assembly to proceed however it saw fit in the enactment of legislation." Id. at 495, 715 N.E.2d 1062. The one-subject rule is thus a product of "the drafters' desire to place checks on the legislative branch's ability to exploit its position as the overwhelmingly pre-eminent branch of state government prior to 1851." Id.

{¶ 26} The Ohio Constitution is one of 41 state constitutions that have a one-subject provision. 1A Singer, Statutes and Statutory Construction (6th Ed.2002) 2, Section 17:1. The universally recognized purpose of these provisions is to prevent so-called "logrolling"—"'the practice of several minorities combining their several proposals as different provisions of a single bill and thus consolidating their votes so that a majority is obtained for the omnibus bill where perhaps no single proposal of each minority could have obtained majority approval separately.'" Id. at 142–143, 11 OBR 436, 464 N.E.2d 153, quoting 1A Sutherland, Statutes and Statutory Construction (4th Ed.1972), Section 17.01. These provisions prevent such a practice "by disallowing unnatural combinations of provisions in acts, *i.e.*, those dealing with more than one subject, on the theory that the best explanation for the unnatural combination is a tactical one—logrolling. By limiting each bill to a single subject, the bill will have unity and thus the purpose of the provision will be satisfied." Id. at 143, 11 OBR 436, 464 N.E.2d 153.

{¶ 27} Our role in the enforcement of the one-subject provision is limited. To avoid interfering with the legislative process, we must afford the General Assembly "great latitude in enacting comprehensive legislation by not construing the one-subject provision so as to unnecessarily restrict the scope and operation of laws, or to multiply their number excessively, or to prevent legislation from

embracing in one act all matters properly connected with one general subject." Id. at 145, 11 OBR 436, 464 N.E.2d 153. Precisely because we endeavor to avoid interfering with the legislative process, we presume that statutes are constitutional. See *Hoover v. Franklin Cty. Bd. of Commrs.* (1985), 19 Ohio St.3d 1, 6, 19 OBR 1, 482 N.E.2d 575.

{¶ 28} True to that legislative deference, we have stated that " '[t]he mere fact that a bill embraces more than one topic is not fatal, as long as a common purpose or relationship exists between the topics.' " *Sheward,* 86 Ohio St.3d at 496, 715 N.E.2d 1062, quoting *Hoover,* 19 Ohio St.3d at 6, 19 OBR 1, 482 N.E.2d 575. To conclude that a bill violates the one-subject rule, a court must determine that the bill includes a disunity of subject matter such that there is "no discernible practical, rational or legitimate reason for combining the provisions in one Act." *Beagle v. Walden* (1997), 78 Ohio St.3d 59, 62, 676 N.E.2d 506. Thus, "the one-subject provision is not directed at plurality but at disunity in subject matter." *State ex rel. Dix v. Celeste* (1984), 11 Ohio St.3d 141, 146, 11 OBR 436, 464 N.E.2d 153.

{¶ 29} Our review of legislation is not so deferential, however, as to effectively negate the one-subject provision. Despite our reluctance to interfere with the legislative process, we "will not * * * abdicate [our] duty to enforce the Ohio Constitution." *Dix,* 11 Ohio St.3d at 144, 11 OBR 436, 464 N.E.2d 153. Indeed, despite earlier cases in which we described the one-subject rule as "directory" in nature, "recent decisions of this court make it clear that we no longer view the one-subject rule as toothless. * * * The one-subject rule is part of our Constitution and therefore must be enforced." *Simmons–Harris v. Goff* (1999), 86 Ohio St.3d 1, 15, 711 N.E.2d 203.

{¶ 30} Application of the one-subject rule is complicated when the challenged provision is part of an appropriations bill, which of necessity contains many different provisions. We addressed the one-subject rule in the context of an appropriations bill in *Simmons–Harris.* In that case, we considered whether the Ohio School Voucher Program should be stricken from an appropriations bill as violative of the one-subject rule. Id. at 14–17, 711 N.E.2d 203. At the outset of our analysis, we acknowledged that "appropriations bills * * * are different from other Acts of the General Assembly [because they] encompass many items, all bound by the thread of appropriations." Id. at 16, 711 N.E.2d 203.

{¶ 31} Nevertheless, we held in *Simmons–Harris* that there was "a 'blatant disunity between' the School Voucher Program and most other items contained in [the Act]" and that there was " 'no rational reason for their combination.' " Id., quoting *Hoover,* 19 Ohio St.3d at 6, 19 OBR 1, 482 N.E.2d 575. In support of our conclusion, we noted that the program "was created in a general appropriations bill consisting of over one thousand pages, of which it comprised only ten pages."

Id. Such legislation, we reasoned, was little more than a "rider"—a provision included in a bill that is " 'so certain of adoption that the rider will secure adoption not on its own merits, but on [the merits of] the measure to which it is attached.' " Id., quoting *Dix*, 11 Ohio St.3d at 143, 11 OBR 436, 464 N.E.2d 153.

{¶ 32} Similar to the statute at issue in *Simmons–Harris*, the amendment to R.C. 3318.31 was an extremely small portion of Am.Sub.H.B. No. 405, which can be loosely described as an appropriations bill. The bill consists of 226 pages, of which the amendment to R.C. 3318.31 is but a single sentence. Surrounding that sentence are over 100 different provisions of law, including provisions that provide property-tax exemptions for Edison program grantees, modify Local Government Fund and Tobacco Master Settlement Agreement Fund distributions, expand use of the Corporate and Uniform Commercial Code Filing Fund, revise provisions of the TANF Housing Program within the Department of Development, authorize transfers from the Budget Stabilization Fund to the General Revenue Fund, and reduce the cigarette tax discount.

{¶ 33} Despite the disunity between the foregoing budget-related items and the exclusion of OSFC employees from the collective-bargaining process, SERB asserts that the items in Am.Sub.H.B. No. 405 are all bound by *appropriations*, thus uniting to form a single subject for purposes of Section 15(D), Article II of the Ohio Constitution. This argument, however, stretches the one-subject concept to the point of breaking. Indeed, SERB's position is based on the notion that a provision that impacts the state budget, even if only slightly, may be lawfully included in an appropriations bill merely because other provisions in the bill also impact the budget. Such a notion, however, renders the one-subject rule meaningless in the context of appropriations bills because virtually any statute arguably impacts the state budget, even if only tenuously. We flatly rejected this proposition in *Simmons–Harris*, 86 Ohio St.3d at 16, 711 N.E.2d 203.

{¶ 34} Further, SERB has offered little guidance regarding the manner in which the amendment to R.C. 3318.31 affects the state budget, aside from the general averment that the amendment "is related to the pay schedules applicable to [employees of OSFC]." Instead, SERB's argument is primarily aimed at persuading us that an appropriations bill can survive scrutiny under the one-subject rule. Of that there can be no doubt. In the instant case, however, the record is devoid of any explanation whatever as to the manner in which the amendment to R.C. 3318.31 will clarify or alter the appropriation of state funds. Accordingly, we can discern no common purpose or relationship between the budget-related items in Am.Sub.H.B. No. 405 and the exclusion of OSFC employees from the collective-bargaining process.

{¶ 35} Finally, SERB contends that, unlike the School Voucher Program in *Simmons–Harris*, the amendment to R.C. 3318.31 in Am.Sub.H.B. No. 405 is not

leading edge or controversial legislation and, therefore, did not require separate discussion by the members of the General Assembly. See *Dix*, 11 Ohio St.3d at 143, 11 OBR 436, 464 N.E.2d 153 ("By limiting each bill to one subject, the issues presented can be better grasped and more intelligently discussed"). Although the School Voucher Program is admittedly broader in scope and more progressive in objective than the amendment to R.C. 3318.31, the importance of the amendment to those affected by it, however few, cannot be doubted. We decline to adopt a rule that requires a correlation between the degree of legislative attention given to a statutory provision within a proposed bill and the number of people affected by it.

## IV

{¶ 36} For the foregoing reasons, we hold that Am.Sub.H.B. No. 405 violates the one-subject rule of the Ohio Constitution with regard to the amendment to R.C. 3318.31. Accordingly, we affirm the judgment of the court of appeals severing the amendment to R.C. 3318.31 from Am.Sub.H.B. No. 405 and saving the nonoffending provisions in the Act. Because the amendment to R.C. 3318.31 was the basis upon which SERB dismissed OCSEA's six petitions, OCSEA has a clear legal right to the reinstatement of its six petitions, and SERB has a clear legal duty to reinstate them. We therefore affirm the judgment of the court of appeals.

Judgment affirmed.

RESNICK, F.E. SWEENEY and O'DONNELL, JJ., concur.

PFEIFER, J., concurs in Parts III and IV of the opinion and in judgment.

LUNDBERG STRATTON and O'CONNOR, JJ., dissent.

---

**LUNDBERG STRATTON, J., dissenting.**

{¶ 37} I respectfully dissent. Because this action essentially seeks a declaratory judgment and a prohibitory injunction, we lack subject-matter jurisdiction over the case and it should be dismissed. The Ohio Constitution does not vest this court with subject-matter jurisdiction to issue a declaratory judgment or injunctive relief. *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 516, 715 N.E.2d 1062 (Moyer, C.J., dissenting).

{¶ 38} Furthermore, mandamus is not appropriate here because relator had available a plain and adequate remedy in the ordinary course of the law by way of

appeal from the SERB decision dismissing the petitions, in addition to an action for declaratory and injunctive relief filed in the proper forum.

{¶ 39} Finally, even assuming that this court properly exercised jurisdiction over this mandamus action, I do not agree with the conclusion that the amendment to R.C. 3318.31 is unconstitutional.

### Declaratory Judgment and Prohibitory Injunction

{¶ 40} This action, disguised in terms of mandamus, is merely an attempt to obtain a declaratory judgment and injunctive relief over which this court and the court of appeals lack original jurisdiction. "[I]f the allegations of a complaint for a writ of mandamus indicate that the real objects sought are a declaratory judgment and a prohibitory injunction, the complaint does not state a cause of action in mandamus and must be dismissed for want of jurisdiction." *State ex rel. Grendell v. Davidson* (1999), 86 Ohio St.3d 629, 634, 716 N.E.2d 704. To discern the real objects of an action, we must examine the complaint " 'to see whether it actually seeks to prevent, rather than to compel, official action.' " *State ex rel. Cunningham v. Amer Cunningham Co., L.P.A.* (2002), 94 Ohio St.3d 323, 324, 762 N.E.2d 1012, quoting *State ex rel. Stamps v. Montgomery Cty. Automatic Data Processing Bd.* (1989), 42 Ohio St.3d 164, 166, 538 N.E.2d 105.

{¶ 41} Although OCSEA couches the allegations of its complaint in terms of an order compelling SERB to reinstate its six clarification and amendment petitions, the manifest objectives of its claims are (1) a declaratory judgment: a declaration that the Am.Sub.H.B. No. 405's amendment to R.C. 3318.31(B) is unconstitutional as well as inapplicable, and (2) a prohibitory injunction: an order enjoining SERB from applying the amendment. However, neither this court nor the court of appeals has subject-matter jurisdiction over such actions. Substantive issues concerning the constitutionality of a statute "simply are not appropriate for determination, by this or any Ohio court, in a proceeding seeking the extraordinary writs of mandamus and prohibition." *Sheward,* 86 Ohio St.3d at 516, 715 N.E.2d 1062 (Moyer, C.J., dissenting). As the Chief Justice explained in *Sheward,* "[r]elator's complaint purports to seek a writ of mandamus * * *. Actually relators have successfully sought a declaratory judgment that [an enactment] is unconstitutional, accompanied by an injunctive order. The Ohio Constitution does not vest this court with original jurisdiction to issue either a declaratory judgment or injunctive relief." Id. See, also, *State ex rel. Satow v. Gausse–Milliken,* 98 Ohio St.3d 479, 2003-Ohio-2074, 786 N.E.2d 1289, ¶ 14 (Supreme Court lacks jurisdiction in declaratory judgment and prohibitory injunction); *State ex rel. Shimko v. McMonagle* (2001), 92 Ohio St.3d 426, 430, 751 N.E.2d 472 ("courts of appeals lack original jurisdiction over claims for declaratory judgment"); *State ex rel. Forsyth v. Brigner* (1999), 86 Ohio St.3d 71, 72, 711 N.E.2d

684 (court of appeals lacked jurisdiction to grant request for prohibitory injunction disguised as a mandamus claim).

{¶ 42} In *Satow*, the relators similarly sought a writ of mandamus to avoid the application of a recent legislative amendment and to compel respondents to apportion tax funds pursuant to a method applicable before the amendment took effect. This court dismissed the action as a disguised action for declaratory judgment (i.e., for a judgment declaring the amendment unconstitutional) and prohibitory injunction (i.e., an order enjoining respondents from applying the amendment). This is identical to OCSEA's claim here: that a legislative amendment is unconstitutional and that SERB should be prevented from applying the amendment to certain workers who are excluded from the definition of public employees under the amendment.

{¶ 43} Moreover, " '[c]onstitutional challenges to legislation are generally resolved in an action in a common pleas court rather than in an extraordinary writ action filed [in a superior court].' " *Satow*, 98 Ohio St.3d 479, 2003-Ohio-2074, 786 N.E.2d 1289, at ¶ 18, quoting *Rammage v. Saros*, 97 Ohio St.3d 430, 2002-Ohio-6669, 780 N.E.2d 278, ¶ 11. "The granting of writs of mandamus and prohibition to determine the constitutionality of statutes will 'remain extraordinary' and 'limited to exceptional circumstances that demand early resolution.' " *State ex rel. Ohio AFL–CIO v. Ohio Bur. of Workers' Comp.*, 97 Ohio St.3d 504, 780 N.E.2d 981, ¶ 12, quoting *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d at 515, 715 N.E.2d 1062 (Pfeifer, J., concurring).

{¶ 44} This is not a "rare case" warranting the resolution of the constitutionality of newly enacted legislation by way of extraordinary writ. For example, this case does not affect either "every tort claim filed in Ohio" or "every injured worker who seeks to participate in the workers' compensation system." *Ohio AFL–CIO*, 97 Ohio St.3d 504, 2002-Ohio-6717, 780 N.E.2d 981, at ¶ 12. Instead, the amendment to R.C. 3318.31(B) challenged by OCSEA has a very limited focus: it affects only employees of the Ohio School Facilities Commission and merely clarifies preexisting law.

{¶ 45} I believe that a declaratory judgment action and a prohibitory injunction filed in common pleas court would also provide the relator with an adequate remedy in the ordinary course of law. SERB would presumably "abide by the applicable law," including a prohibitory injunction preventing it from applying the amendment, and in declaratory judgment actions, "R.C. 2721.09 authorizes courts to grant further relief based upon a previously granted declaratory judgment 'whenever necessary or proper.' " *Satow*, 98 Ohio St.3d 479, 2003-Ohio-2074, 786 N.E.2d 1289, at ¶ 20.

{¶ 46} The appellate-court magistrate correctly recommended dismissal of this case for lack of subject-matter jurisdiction. Because the only way that a court

could provide OSCEA with relief was by declaring the amendment to R.C. 3318.31 unconstitutional, this is actually an action for declaratory judgment, not mandamus.

## Appeal of SERB Decisions

{¶ 47} Furthermore, OCSEA had an adequate legal remedy by way of appeal from SERB's decision dismissing the petitions for amendment of certification and for clarification. The majority considers this waived because SERB did not raise this specific argument in the court of appeals. However, a court lacks jurisdiction to grant a writ of mandamus when the relator otherwise has the right to appeal. *State ex rel. Heath v. Ohio State Med. Bd.* (1992), 64 Ohio St.3d 186, 187, 593 N.E.2d 1386. This includes a right to an administrative appeal. *State ex rel. Holiday v. Indus. Comm.*, 98 Ohio St.3d 472, 2003-Ohio-2060, 786 N.E.2d 1282, ¶ 9; *State ex rel. Reeves v. Indus. Comm.* (1990), 53 Ohio St.3d 212, 213, 559 N.E.2d 1311. This court simply has no jurisdiction to consider the merits of a mandamus case when the relator has an adequate remedy by way of appeal. A party cannot waive the issue in order to confer jurisdiction.

{¶ 48} SERB is an agency whose administrative adjudications are subject to judicial review pursuant to R.C. 119.12. R.C. 4117.02(P) (formerly [M] ); *South Community, Inc. v. State Emp. Relations Bd.* (1988), 38 Ohio St.3d 224, 527 N.E.2d 864, syllabus; *Ohio Historical Society v. State Emp. Relations Bd.* (1990), 48 Ohio St.3d 45, 46, 549 N.E.2d 157.

{¶ 49} The only potential exception to appealability that may apply here is R.C. 4117.06(A), which involves SERB decisions concerning the appropriate collective-bargaining unit: "The state employment relations board shall decide in each case the unit appropriate for the purposes of collective bargaining. The determination is final and conclusive and not appealable to the court." Thus, R.C. 4117.06(A) specifically provides that orders from SERB are not appealable—and the general rule of R.C. 119.12 does not apply—when the order determines the "unit appropriate for the purposes of collective bargaining."

{¶ 50} Issues surrounding the appropriateness of a bargaining unit include "the desires of the employees; the community of interest; wages, hours, and other working conditions of the public employees; the effect of over-fragmentation; the efficiency of operations of the public employer; the administrative structure of the public employer; and the history of collective bargaining." R.C. 4117.06(B).

{¶ 51} However, the appropriateness of the unit for collective bargaining is not the issue here. In this case, OCSEA's petitions requested that certain positions be recognized as public-employee positions under R.C. 4117.01, subject to collective bargaining, and that the positions should be included in a certified OCSEA bargaining unit.

{¶ 52} R.C. 4117.06(A) does not preclude the appeal of "the initial issue of whether * * * employees are 'public employees' subject to the [Public Employees Collective Bargaining] Act." *South Community,* 38 Ohio St.3d at 227, 527 N.E.2d 864. The issue of whether an employee is a "public employee" under R.C. 4117.01(C) is generally a threshold inquiry to determine whether the employee is even eligible to participate in the collective-bargaining process. Only if SERB concluded that the employee was a "public employee" would it reach the secondary issue of whether the unit is appropriate for collective bargaining under R.C. 4117.06(A).

{¶ 53} In *OCSEA, AFSCME Local 11, AFL–CIO v. State Emp. Relations Bd.* (Oct. 27, 1998), Franklin App. No. 98AP–337, 1998 WL 767458, the union filed a petition for amendment of certification with SERB to add certain assistant public defenders to a bargaining unit. SERB determined that these assistants were not public employees. Consequently, it was unnecessary to reach issues relating to the appropriate bargaining unit. The court of appeals held that SERB's decision was not made under R.C. 4117.06(A) and was appealable:

{¶ 54} "Clearly, the board made no determination under R.C. 4117.06(A). Rather, the issue decided was whether or not the assistant public defenders were public employees under R.C. 4117.01(C). A determination of such issue is appealable.

{¶ 55} "* * *

{¶ 56} "[T]he case herein does not involve an issue relating to the appropriateness of a bargaining unit." Id.

{¶ 57} SERB's determination concerning whether certain individuals are public employees for purposes of inclusion in a bargaining unit is distinct from the determination of the appropriate bargaining unit. Here, SERB decided the preliminary issue of whether the individuals are public employees. It did not reach the secondary issue of the appropriateness of the bargaining unit. Therefore, this is an appealable issue and one that should not be remedied in mandamus. If relator did not appeal, its options may be foreclosed. An appealable issue that is not timely asserted cannot be "saved" by a mandamus action.

{¶ 58} The majority relies on *State ex rel. Dayton Fraternal Order of Police Lodge No. 44 v. State Emp. Relations Bd.* (1986), 22 Ohio St.3d 1, 22 OBR 1, 488 N.E.2d 181, to reach a contrary result. However, *Dayton FOP* preceded *South Community* and did not consider the public employee/unit appropriateness distinction. I believe that *OCSEA* provides the better analysis of this issue, which was neither raised nor discussed in *Dayton FOP*.

One–Subject Rule

{¶ 59} First, I note that the court of appeals ignored the basic precept to dispose of a case on nonconstitutional grounds when possible. *Norandex, Inc. v. Limbach* (1994), 69 Ohio St.3d 26, 28, 630 N.E.2d 329. The majority acknowledges that the appellate court did not follow this policy. Nevertheless, the majority proceeds to affirm the appellate court's decision to invalidate the amendment to R.C. 3318.31 on constitutional grounds. Assuming this court has the authority to exercise jurisdiction in this matter, I believe that the majority should have, at the minimum, remanded to the court below to consider the nonconstitutional arguments it did not reach.

{¶ 60} However, more disturbing to me is that a majority of this court is issuing yet another opinion eroding the one-subject rule. I believe that this rule has become a tool for those disgruntled with new legislation to easily attack it when there is no legitimate basis on which to challenge the legislation.

{¶ 61} In my dissenting opinion in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d at 531–533, 715 N.E.2d 1062, I examined the history of the one-subject rule:

{¶ 62} "The history of the one-subject rule reveals the weakness in the majority's position. The one-subject rule, set forth in Section 15, Article II of the Ohio Constitution, was first construed in 1856 in *Pim v. Nicholson* (1856), 6 Ohio St. 176 [1856 WL 35]. In *Pim,* the court considered whether an Act entitled 'An Act in addition to the several acts in relation to the courts of justice and their powers and duties' violated the one-subject rule. * * *

{¶ 63} "The court in *Pim* determined that the purpose of the one-subject rule was 'to prevent combinations, by which various and distinct matters of legislation should gain a support which they could not if presented separately.' *Id.* at 179. But the court in *Pim* held that the one-subject rule was intended only to operate as a rule for the General Assembly to apply to bills. *Id.* The court also determined that to expose every Act to judicial application of a mandatory one-subject rule would result in inconsistent decisions because of differing judicial philosophies, which would make legislating a formidable task at best. *Id.* at 180. Thus, the court held that the one-subject rule is directory. *Id.* Accordingly, *Pim* envisioned that the *only judicial safeguard* against a violation of the one-subject rule would be upon a finding of a *gross* and *fraudulent* violation of the rule. *Id.* Based upon this analysis, the court in *Pim* held that the Act did not violate the one-subject rule.

{¶ 64} "Some delegates at the 1873–1874 Ohio Constitutional Convention proposed to amend the one-subject rule to make it mandatory rather than directory. 2 Proceedings and Debates of the Third Constitutional Convention of Ohio (1874) 285. However, concern grew among the other delegates over the

wisdom of making the one-subject rule mandatory, as evidenced by the remarks of delegate S.O. Griswold:

{¶ 65} " 'I am opposed to the adoption of this amendment, on the ground that it will lead to confusion and constant litigation of the question whether one subject is embraced in it or not. A subject of legislation may require various provisions, and men will be in doubt whether these different provisions come within the language of this clause. Under this general rule, the bill shall be made to express, by the title, all the provisions of the bill, and subjects of legislation have frequently such a wide range, and are so connected with other matters, that it is necessary, sometimes, to have your bill so enlarged that doubts will constantly be raised * * *.' *Id.* at 284–285.

{¶ 66} "Also opposing one such amendment was delegate William W. West, who stated:

{¶ 67} " '[W]hat is a single subject, one subject? Take for example, the code of civil procedure. There is your title: a bill or an act to provide for a code of civil procedure. * * * Now, under that general title we may express that the general subject matter within that act is the civil practice; but there are an infinite number of subjects contained within that general subject, which might very properly be considered and regarded as distinct and different subjects matter [*sic*]. You have a statute of limitation. True, that has a general relation to the subject of practice, but it is a very distinct thing from the organization of a jury, and a very distinct thing from the law of evidence; and yet, they are all embraced within the same act. Now if we put into the Constitution the provision that no law shall contain more than one subject matter, may we not get into trouble and confusion about the matter? The subject of juries has a general relation to the matter of civil practice, a general relation to the subject matter of criminal practice; but it is a different subject entirely from the law of evidence. *Hence you will see that difficulties at once arise; so that under a statute of that kind it may be difficult to incorporate a great many subordinate subjects that have relation* to the general subject. * * * I fear very much that our generalization of subjects will exclude a hundred and one subordinate subjects that ought to be embraced in the same bill, or might very properly be embraced in the same bill.

{¶ 68} " ' * * * *There are general subjects of legislation, and there are subordinate subjects, cognate to the general subject, that are properly embraced in the same bill; and yet if you put this in, I fear very much, that they cannot be included.*' (Emphasis added.) *Id.* at 291.

{¶ 69} "The convention *voted against* the proposed amendments to the one-subject rule. *Id.* at 292, 1543–1544. *Pim* emerged unscathed. * * *

{¶ 70} "The purpose of the one-subject rule is to prevent logrolling. [*State ex rel. Dix v. Celeste* (1984), 11 Ohio St.3d] at 142, 11 OBR at 438, 464 N.E.2d at 155.

Logrolling is the practice of several minorities combining their proposals as a single bill, thereby consolidating their votes to obtain a majority even though no single proposal would have passed separately. Rudd, 'No Law Shall Embrace More Than One Subject' (1958), 42 Minn.L.Rev. 389, 391. A variant is the practice of attaching a rider to a popular bill, whereby the rider is passed on the coattails of the popular bill. *Id.*

{¶ 71} "Yet '[a]ll bills are subject to debate, discussion, and amendment prior to being put to a vote.' *Chambers v. St. Mary's School* (1998), 82 Ohio St.3d 563, 566, 697 N.E.2d 198, 201, citing Section 15, Article II of the Ohio Constitution. I believe that there is an important distinction between logrolling and the typical and necessary debate, compromise, and amendment of bills during the legislative process. Protecting this negotiation and revision from being negated by an overzealous application of the one-subject rule is further reason to apply the one-subject rule with extreme caution. The one-subject rule 'was imposed to facilitate orderly legislative procedure, *not* to hamper or impede it.' (Emphasis *sic.*) *Dix*, 11 Ohio St.3d at 143, 11 OBR at 438, 464 N.E.2d at 156."

{¶ 72} *Pim* remained the definitive voice on the one-subject rule for more than a century. However, it appears that the one-subject rule has now become an open license for a majority of this court to strike down new legislation—either in whole or in part—by comparing a bill's plurality instead of focusing on its disunity. Within the past two decades, this court expanded the reach of a directory rule, created exceptions, then exceptions to the exceptions, and finally, substantial confusion for lower courts and litigants. See *ComTech Sys., Inc. v. Limbach* (1991), 59 Ohio St.3d 96, 570 N.E.2d 1089; *State ex rel. Ohio AFL–CIO v. Voinovich* (1994), 69 Ohio St.3d 225, 631 N.E.2d 582; *Simmons–Harris v. Goff* (1999), 86 Ohio St.3d 1, 711 N.E.2d 203; *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 715 N.E.2d 1062.

{¶ 73} As recently as 1984, the court relied upon *Pim* in upholding the constitutionality of a bill that abolished an agency, transferred its duties, and funded the transfer. *State ex rel. Dix v. Celeste*, 11 Ohio St.3d 141, 11 OBR 436, 464 N.E.2d 153. *Dix* reiterated the purposes of the one-subject rule: to prevent logrolling by disallowing unnatural combinations of provisions within an act; to prevent riders from being attached to bills that are certain of being adopted when the rider would not have been adopted on its own merits; and to facilitate orderly legislative procedure by excluding issues extraneous to the bill. Id. at 143, 11 OBR 436, 464 N.E.2d 153. *Dix* recognized that the one-subject provision was "merely directory in nature" and only "a manifestly gross and fraudulent violation of this rule will cause an enactment to be invalidated." Id. at syllabus. "[T]he one-subject provision is not directed at plurality but at disunity in subject matter." Id. at 146, 11 OBR 436, 464 N.E.2d 153.

{¶ 74} But by 1991 it became obvious that the court was more aggressively examining the one-subject rule. First, in *ComTech Sys., Inc. v. Limbach*, the court carved out an exception for appropriations bills that deal "with the operations of the state government." Id., 59 Ohio St.3d at 99, 570 N.E.2d 1089. Shortly thereafter came *State ex rel. Hinkle v. Franklin Cty. Bd. of Elections* (1991), 62 Ohio St.3d 145, 149, 580 N.E.2d 767, in which the court decided it was appropriate to rely on the one-subject rule to sever any provision it deemed unrelated to the bill's subject.

{¶ 75} By 1994, it became apparent that there was little consensus among the justices on the rule's meaning. In *State ex rel. Ohio AFL–CIO v. Voinovich*, 69 Ohio St.3d 225, 631 N.E.2d 582, all seven justices were compelled to author a separate opinion in the case. The court concluded that provisions in a workers' compensation bill embraced more that one topic, but all shared a common purpose. The topics were not so unrelated that they constituted a "manifestly gross and fraudulent violation" of the one-subject rule. Id. at 229, 631 N.E.2d 582. Nevertheless, the result in *Voinovich* was that the court excised two provisions of a bill merely because they did not have a "clear common relationship" with the other topics. Id. at 230, 631 N.E.2d 582.

{¶ 76} In *Simmons–Harris v. Goff*, 86 Ohio St.3d 1, 711 N.E.2d 203, this court decided that there was disunity between a school-voucher program and other provisions within an appropriations bill, despite earlier case law that recognized the inherent disunity of topics in appropriations bills. The court, "no longer view[ing] the one-subject rule as toothless" despite the "directory" language of *Dix*, severed the school voucher provision as violative of the one-subject rule. Id. at 15 and 17, 711 N.E.2d 203.

{¶ 77} Then came *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 715 N.E.2d 1062, which dramatically reframed the test for violation of the one-subject rule. This court struck the entire bill in *Sheward* using a demanding yet loosely constructed test. The Chief Justice, Justice Cook, and I dissented in *Sheward* because the bill did have one subject—tort reform. There may have been a plurality of topics, but there was no disunity of the subject matter. Id. at 538, 715 N.E.2d 1062 (Lundberg Stratton, J., dissenting). Now, per *Sheward*, any court reviewing a bill for violation of the one-subject rule must find a common thread running between the subject of the bill and its topics as well as between the topics themselves. This is a far cry from the "manifestly gross and fraudulent" standard enunciated in *Pim*. It certainly contradicts the delegates' intention at the 1873–1874 Ohio Constitutional Convention where an amendment making the rule mandatory rather than directory was defeated.

{¶ 78} Here, the majority also considered the plurality of provisions in Am.Sub. H.B. No. 405 to conclude that the amendment to R.C. 3318.31, a single sentence

in a 226–page bill, is so unrelated to the topic of budget corrections so as to violate the one-subject rule. I disagree. The relator has a heavy burden to prove its case. It has failed to present any evidence that the amendment to R.C. 3318.31 is a "manifestly gross and fraudulent violation" of our Constitution's one-subject rule. The relator presented no evidence that the amendment to R.C. 3318.31 would not have survived the legislative process on its own, or that it was "tagged on" to an existing bill to slip it through the process. Relator merely alleges that the amendment was unrelated to the other topics in the bill, despite the fact that it clearly affects budgetary issues.

{¶ 79} If this is all that is necessary to establish a violation of the one-subject rule, we have now completely discarded the "manifestly gross and fraudulent violation" standard. We have opened the door for anyone to challenge any small provision in a bill if it fails to meet the high threshold of commonality between all the topics within the bill even if the bill is constitutional in all other aspects. There will be no basis to deny the next challenge based on the loose standards set in this case. We are indeed going down a slippery slope that will impede the legislative process rather than protect against "manifestly gross and fraudulent" violations of the one-subject rule. As a result, the remainder of Am.Sub.H.B. No. 405, as well as other bills, is now susceptible to challenge without any basis remaining in the law upon which to refute the attack.

## Conclusion

{¶ 80} In this case, I believe that this court has greatly weakened our standards for exercising jurisdiction over original actions such as mandamus and has likewise eroded the longstanding principle enunciated in *Pim*. This court continues to utilize the one-subject rule to invalidate legislation with little consistency or reason.

{¶ 81} Consequently, for the foregoing reasons, I respectfully dissent. I would reverse the judgment of the court of appeals because OCSEA's claim is not cognizable in mandamus.

O'CONNOR, J., concurs in the foregoing dissenting opinion.

---

Buckley King and James E. Melle; and Linda K. Fiely, for appellee.

Jim Petro, Attorney General, and Sharon A. Jennings, Assistant Attorney General, for appellant.