[Cite as *Upper Arlington City School Dist. Bd. of Edn. v. Upper Arlington Bldg. Dept.*, 2021-Ohio-3718.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Upper Arlington City School District Board of Education, | : | |
| Appellant-Appellant, | : | |
| | : | No. 20AP-576 |
| v. | | (C.P.C. No. 20CV-4102) |
| | : | |
| City of Upper Arlington Building Department et al., | | (REGULAR CALENDAR) |
| | : | |
| Appellees-Appellees. | : | |

D E C I S I O N

Rendered on October 19, 2021

**On brief:** *Bricker & Eckler LLP, Christopher L. McCloskey, Nelson M. Reid,* and *Tarik M. Kershah,* for appellant.

**On brief:** *Darren Shulman,* Upper Arlington City Attorney, for appellee City of Upper Arlington Building Department.

**On brief:** *Arnold & Clifford LLP, James E. Arnold,* and *Gerhardt A. Gosnell II,* for appellee intervenor Jane Doe.

APPEAL from the Franklin County Court of Common Pleas

MENTEL, J.

{¶ 1} After the Ohio Board of Building Appeals ("BBA") denied a variance in the design of the bathrooms for its proposed elementary school, the Upper Arlington City School District Board of Education ("School Board") filed an administrative appeal to the Franklin County Court of Common Pleas. Because the City of Upper Arlington Building Department ("City") stipulated to the variance, the School Board and the City filed a joint motion for summary judgment that the trial court granted. One month later, Jane Doe, the mother of a student who would attend the new elementary school, filed a motion to

intervene and a motion seeking relief from judgment. The trial court granted both motions and the School Board has appealed. As explained below, Jane Doe had no legally protectable interest in the litigation and the trial court lacked authority to vacate the judgment. Accordingly, we reverse and vacate the rulings granting Jane Doe's motions and remand this case to the trial court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} The School Board commissioned Architect Moody Nolan to design its new elementary school, Windermere Elementary. (July 29, 2020 Stipulations of Fact at ¶ 2, hereinafter, "Stipulations.") The School Board approved an architectural design that included "single-occupant toilet rooms with floor-to-ceiling walls and solid, full-frame lockable doors, identified by use for either sex," as well as "a communal lavatory" for students. (Stipulations at ¶ 3.)

{¶ 3} After the City reviewed the plan, it issued an adjudication order that only partially approved the new elementary school design and listed a number of items that did not conform to the Ohio Building Code. (Stipulations at ¶ 5.) The order stated that the bathroom design violated Section 2902.02 of the Ohio Building Code, Ohio Adm.Code 4101:1-29-01, which states: "Where plumbing fixtures are required, separate facilities shall be provided for each sex." (Ex. A-1 to Stipulations, Item 13.) The order further provided: "Provide separate restrooms for each sex. These shall be labeled on the plans and correct signs provided." *Id.*

{¶ 4} The School Board appealed the nonconforming adjudication of the bathroom design to the BBA. (Stipulations at ¶ 7.) In its appeal, the School Board argued that the finding of nonconformance was "contrary to a fair interpretation or application" of the Ohio Building Code, or, in the alternative, that the BBA should grant a variance which "would not be contrary to the public interest and is warranted to avoid unnecessary hardship." (Stipulations at ¶ 10-11.)

{¶ 5} In support of its position, the School Board presented testimony from several representatives. Steve Dzuranin of Moody Nolan architects testified that the elementary school design featured "three unisex restroom[ ] [facilities] for student use." (Tr. at 9-10.) In "each restroom facility, each stall for the water closets [has] floor-to-ceiling walls, and each stall has a solid full-framed lockable door. The facilities for [each] washroom are

separate from that, and they are for shared use as well." (Tr. at 10.)  Mr. Dzuranin noted that the "entry into the washroom itself does not have a door. It is open so that staff can monitor the students from a health perspective, making sure that they do wash their hands, which is always a concern at the elementary school level; and then also from a safety perspective to make sure that if an incident does arise, they can intervene." (Tr. at 11.)

{¶ 6}   Paul Imhoff, the Superintendent of Upper Arlington Schools, described the "lengthy process" in the community for planning its new elementary school. (Tr. at 22-23.) The School Board believed that "single-user toilet rooms [were] going to alleviate the very real issue of student anxiety that is caused by the use of more traditional group bathrooms." (Tr. at 23.) Dr. Imhoff stated that the new bathroom designed improved safety: "student supervision is positively impacted because a single teacher can more effectively supervise students," as "all of the students are in the same area" for monitoring by teachers. (Tr. at 24.) He also emphasized "potty parity," which would reduce "lost time of instruction" because children would "be able to go to the bathroom and not have to wait in line based upon sex." *Id.* The design would also allow staff to more easily assist students with disabilities or "any student who needs a bit of help." *Id.* Dr. Imhoff also stated that "safety and privacy are greatly enhanced in our design, and it greatly reduces the risk of bullying and harassment." (Tr. at 25.)  "Many, many students are very nervous about the entire bathroom experience, and making this a private experience more like they have at home is good for every kid." *Id.* Dr. Imhoff had spoken "to many, many parents who state the use of group bathrooms is one of the biggest areas of stress and anxiety for kids in school," as such bathrooms provide "one of the greatest opportunities for bullying." *Id.* Dr. Imhoff also noted that it was unnecessary to "classify students based upon gender," citing the "growing number of students in all school districts who don't identify as male or female, and the traditional bathroom design causes a great deal of stress and anxiety for these students." *Id.* Simply, the appellant is seeking to obtain a variance to address student safety and privacy on two fronts.  First, to address the overall safety and privacy concerns for every student attending Upper Arlington schools.  Second, to address the all too real stress, anxiety, and privacy concerns that transgender students face on a daily basis from adults and peers simply because they openly identify differently from the assigned gender they received at birth.

{¶ 7} When questioned by the BBA, Dr. Imhoff agreed that some parents had objected to the bathroom design, but their concerns had "not been based upon safety." (Tr. at 30.) Rather, they were "people who look at this as a values issue and they think it's somehow wrong to be a gender * * * nonconforming student." *Id.* Dr. Imhoff described "an engagement process and a design process" that "went on for 18 months" with "full-scale community meetings" and "volunteers who were a part of every building." (Tr. at 30-31.)

{¶ 8} Roger Eastep, the City's Chief Building Official, provided the following position statement concerning the design:

> I do not believe that the [BBA's] action in approving this request will impact the safety of the building or its occupants. If the [BBA] does not approve this request, the City would further request clarity on the other buildings with a similar plan. Please allow this letter to serve as notice that the Chief Building Official does not find approval of this request will result in safety hazard for this building or occupants.

(Stipulations at ¶ 9.)

{¶ 9} By a 3-2 vote, the BBA upheld the finding of noncompliance and did not issue a variance. (Ex. A-2 to Stipulations.)

{¶ 10} The School Board appealed the BBA's final order to the trial court under R.C. 3781.031(D), which states: "Any party adversely affected by an order issued following an adjudication hearing [of the BBA] may appeal to the court of common pleas of the county in which the party is a resident or in which the premises affected by the order is located." The School Board requested that the trial court either "determine as a matter of fact and law that the proposed design of the School is a fair interpretation or application" of the Ohio Building Code, or that it order the BBA to grant a variance. (June 24, 2020 Notice of Administrative Appeal and Demand for Record.)

{¶ 11} The School Board and the City jointly moved the trial court for summary judgment granting the variance to allow the proposed bathroom design. (July 29, 2020 Joint Mot. for Summ. Jgmt.) Both parties agreed that a variance under R.C. 3781.19 was justified because "single-occupant toilet rooms identified for use by either sex are not against the public interest and enforcement of the Building Code and Plumbing Code provisions at issue will result in an unnecessary hardship." (Joint Mot. for Summ. Jgmt. at 2.) Separately, the School Board filed a brief that also argued for a variance, but additionally

argued that the BBA had erred when it upheld the City's adjudication order. (Sept. 2, 2020 Brief of Appellant.)

{¶ 12} The trial court granted the parties' joint motion for summary judgment. (Sept. 15, 2020 Decision.) It cited the evidence that the School Board and the City had stipulated to, including the testimony before the BBA of the architect, the superintendent, and the City's Chief Building Official, when ruling that "a preponderance of the evidence supports the Court's finding that a literal enforcement of the Code as applied to the School District's bathroom design will result in unnecessary hardship." (Decision at 9.) The trial court also found that "no testimony or evidence presented at the BBA hearing" demonstrated "that utilization of single-occupant toilet rooms identified for use by either sex was against the public interest." *Id.* It noted that the International Building Code had been amended "to expressly allow unisex single-user toilet rooms," and that the Ohio Department of Commerce had "proposed these same exceptions to the Ohio Building Code." (Decision at 11.) It also cited the parties' stipulation that the "requested variance is not a public safety issue under the Code." *Id.* The trial court both granted the parties' motion for summary judgment and remanded the case to the BBA with an order to issue the requested variance. (Decision at 13.)

{¶ 13} One month later, Jane Doe filed a motion to intervene under Civ.R. 24. She identified herself as "a resident of Upper Arlington and the mother of John Doe, a kindergarten student at Windermere Elementary." (Oct 14, 2020 Mot. to Intervene at 2.) She argued that the trial court "simply did not have the full story, nor an opportunity to know the full story before entering summary judgment." *Id.* She asserted that the "plans for only unisex bathrooms at the Windermere school were not disclosed or discussed in the community meetings referenced in the testimony of School Superintendent Dr. Paul Imhoff. And obviously, the public did not have an opportunity to present evidence to this Court that a variance would not be in the public interest." *Id.* In support of her request to intervene under Civ.R. 24, Jane Doe cited her son's attendance at Windermere Elementary as evidence of her "personal interest in the subject matter of the action" and claimed that her interest "will be (and in fact already has been impaired)" because she opposed the variance. *Id.* at 4. Because the School Board and the City both sought the variance, they "obviously" did not adequately represent her interests. *Id.* She also filed a motion for relief

from judgment under Civ.R. 60(B) with the motion to intervene, asserting that it was "the equivalent of a 'pleading' " as required by Civ.R. 24 in the context of an administrative appeal. *Id.* at fn. 1.

{¶ 14} The next day, the trial court granted Jane Doe's motion to intervene as a matter of right under Civ.R. 24(A). (Oct. 15, 2020 Decision and Entry.) The trial court considered the motion timely because Jane Doe had filed it within 30 days of the summary judgment ruling, " 'within days' of being informed of it," and before remand of the matter to the BBA. *Id.* at 5. It cited Jane Doe's "personal interest in the subject matter of the appeal as the mother of a current kindergarten student," agreed that "her interests have been impaired because she had no opportunity to oppose the variance," and considered the parties' "joint, uncontested and stipulated summary judgment" an impairment of "Jane Doe's ability to protect her interests." *Id.* The trial court also found that the School Board and the City would "not be unduly inconvenienced or prejudiced" because "the appeal period has not run, the matter has not yet been remanded to the [BBA], and no variance has been issued." *Id.* at 6. The trial court acknowledged that neither the School Board nor the City "had the opportunity to file memoranda in support or opposition to the motion" to intervene but justified ruling on the motion immediately in order to rule "prior to the expiration of the appeal period and before the matter is remanded" to the BBA. *Id.* at 1. For these reasons, the trial court granted the motion and accepted Jane Doe's motion for relief from judgment under Civ.R. 60(B) in lieu of the pleading required by Civ.R. 24. *Id.* at 6-7.

{¶ 15} The trial court also granted the motion for relief from judgment. (Nov. 30, 2020 Decision and Entry.) It found that Jane Doe had standing because "she sought to intervene as an appellee, not an appellant." (Decision and Entry at 2-3.) Jane Doe had moved for relief from judgment under Civ.R. 60(B), arguing "that she possesse[d] a meritorious defense [and] is entitled to relief," while the School Board argued that a motion under Civ.R. 60(B) was procedurally improper given the "special statutory proceeding" of the appeal. (Decision and Entry at 4.) The trial court did not grant the motion under Civ.R. 60(B), but instead reasoned that it had been "procedurally improper" to grant the parties' joint motion for summary judgment. Thus, it considered the judgment "void *ab initio*" and ruled:

> After review and consideration, the Court finds Appellee's, Jane Doe, Motion well-taken, and is hereby **GRANTED,** in accordance with above-decision. The Court's September 15, 2020 Entry granting the School Board summary judgment is a legal nullity and is hereby **VACATED.**

(Emphasis sic.) (Decision and Entry at 5.)

{¶ 16} The School Board has appealed, challenging the trial court's ruling to allow Jane Doe to intervene and its decision to vacate the judgment, with the following assignments of error:

> [I.] [The] Trial Court erred in granting [the] motion to intervene of Intervenor Jane Doe, in her individual capacity and on behalf of her minor son John Doe through [the] Trial Court's "Decision and Entry Granting Motion to Intervene of Jane Doe (Filed October 14, 2020) and Order Adding Jane Doe, Individually and on Behalf of her Minor Son, as an Appellee" filed 10/15/20.

> [II.] [The] Trial Court erred in granting [the] motion to vacate judgment of Intervenor Jane Doe, in her individual capacity and on behalf of her minor son John Doe through [the] Trial Court's "Decision and Entry Granting Appellee's, Jane Doe, Motion to Vacate Summary Judgment, filed October 15, 2020" filed 11/30/20.

## II. STANDARD OF REVIEW

{¶ 17} We apply an abuse of discretion standard to review a trial court's ruling on a motion to intervene under Civ.R. 24. *State ex rel. Merrill v. Ohio Dept. of Natural Resources*, 130 Ohio St.3d 30, 2011-Ohio-4612, ¶ 41 ("Whether intervention is granted as of right or by permission, the standard of review is whether the trial court abused its discretion in allowing intervention.").

{¶ 18} An abuse of discretion results if a trial court's ruling is "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "An unreasonable decision is one that is unsupported by a sound reasoning process." *Lias v. Beekman*, 10th Dist. No. 06AP-1134, 2007-Ohio-5737, ¶ 12, citing *AAAA Ents. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). An arbitrary ruling lacks an " 'adequate determining principle' " and is " 'not governed by any fixed rules or standard.' " *Downey v. 610 Morrison Rd., LLC*, 10th Dist. No. 07AP-903,

2008-Ohio-3524, ¶ 11, quoting *Dayton ex rel. Scandrick v. McGee*, 67 Ohio St.2d 356, 359 (1981). An unconscionable ruling " 'affront[s] the sense of justice, decency, or reasonableness.' " *U.S. Bank Natl. Assn. v. Collier*, 10th Dist. No. 08AP-207, 2008-Ohio-6817, ¶ 19, quoting *Black's Law Dictionary* (8th Ed.2004).

{¶ 19} Questions of law, which include those of a court's subject-matter jurisdiction, are reviewed de novo, with no deference to the trial court's reasoning. *Kingsley v. Ohio State Personnel Bd. of Rev.*, 10th Dist. No. 10AP-875, 2011-Ohio-2227, ¶ 27. This standard applies to the trial court's ruling vacating its previous entry of summary judgment, as it purported to exercise its inherent authority when so doing.

## III. ANALYSIS

{¶ 20} The School Board's assignments of error challenge the trial court's rulings granting Jane Doe's motions for intervention under Civ.R. 24 and relief from judgment under Civ.R. 60. Before addressing the substance of those rulings, we must resolve the preliminary question of whether those Ohio Rules of Civil Procedure apply in an administrative appeal under R.C. 3781.031 of a BBA decision to a court of common pleas.

{¶ 21} Rule 1 of the Ohio Rules of Civil Procedure determines the rules' applicability to the trial court proceedings in this administrative appeal. *See Gallick v. Franklin Cty. Bd. of Revision*, 10th Dist. No. 15AP-182, 2018-Ohio-818, ¶ 16-18 (applying Civ.R. 1 to determine ("whether Civ.R. 59, which governs motions for new trial, applies to appeals initiated under R.C. 5717.05" of decisions of the county board of revision); *Richmond v. Bd. of Rev.*, 64 Ohio App.2d 243, 245 (10th Dist.1979) (applying Civ.R. 1 to determine whether the trial court had discretion under Civ.R. 6 to grant an extension of time to agency to file a transcript in an appeal under R.C. 4141.26 of administrative determination employer unemployment compensation rate).

{¶ 22} Under Civ.R. 1(A), the Ohio Rules of Civil Procedure apply "in all courts of this state in the exercise of civil jurisdiction at law or in equity," subject to the exceptions stated in section (C):

> These rules, to the extent that they would by their nature be clearly inapplicable, shall not apply to procedure (1) upon appeal to review any judgment, order or ruling, * * * (8) in all other special statutory proceedings; provided, that where any statute provides for procedure by a general or specific reference

to all the statutes governing procedure in civil actions such procedure shall be in accordance with these rules.

{¶ 23} As the Supreme Court of Ohio has noted, "the rules are not categorically inapplicable to appeals from administrative orders. Under Civ.R. 1(C), the rules apply unless they are 'by their nature * * * clearly inapplicable.' " *Ramsdell v. Ohio Civ. Rights Comm.*, 56 Ohio St.3d 24, 27 (1990). The question of whether the Civil Rules apply "must be decided on a case-by-case basis, depending on the statute involved." *Id.* In addition, "it cannot be categorically said that the Rules of Civil Procedure do or do not apply. One must begin with the general proposition that they do apply and address each rule on its own merits." *Haig v. State Bd. of Edn.*, 10th Dist. No. 89AP-1251, 1990 Ohio App. LEXIS 3331, *13-14 (Aug. 9, 1990).

{¶ 24} "There are two considerations in determining whether the Civil Rules do not apply: whether the procedural statute governs a special statutory proceeding and whether that statute renders the civil rule at issue 'clearly inapplicable.' " *Ferguson v. State*, 151 Ohio St.3d 265, 2017-Ohio-7844, ¶ 21. "An administrative appeal filed pursuant to a statute, * * * is a special statutory proceeding." *Gallick* at ¶ 18. In this case, the School Board appealed the BBA's decision to the trial court under R.C. 3781.031, which states:

> Any party adversely affected by an order issued following an adjudication hearing may appeal to the court of common pleas of the county in which the party is a resident or in which the premises affected by the order is located. The court shall not be confined to the record as certified to it by the agency but any party may produce additional evidence and the court shall hear the matter upon the record and additional evidence any party introduces. The court shall not affirm the agency's order unless the preponderance of the evidence before it supports the reasonableness and lawfulness of the order and any rule of the board of building standards upon which the order is based in its application to the particular set of facts or circumstances involved in the appeal.

{¶ 25} "A review of a decision of the Board of Building Appeals is specifically governed by R.C. 3781.031, although there is an interplay with R.C. Chapter 119." *Parkman Properties v. Tanneyhill*, 11th Dist. No. 2007-T-0098, 2008-Ohio-1502, ¶ 16; *see also* R.C. 3781.031(A) ("Any department or agency of the state or any political subdivision that enforces Chapters 3781. and 3791. of the Revised Code * * * shall issue an adjudication order

within the meaning of sections 119.06 to 119.13 of the Revised Code"). Thus, appeals from adjudication orders of the BBA are subject to the general provisions governing administrative appeals under Chapter 119, as well as any more specific provision under R.C. 3781.031. *See Sergakis v. Busch*, 10th Dist. No. 99AP-283, 1999 Ohio App. LEXIS 6467, *7 (Dec. 30, 1999) (citing specific standards in R.C. 3781.031 that apply to BBA appeals and the reviewable scope of evidence, as compared to R.C. 119.12); *84 Lumber Co. v. McMillen*, 10th Dist. No. 76AP-364, 1976 Ohio App. LEXIS 8165, *17 (Dec. 14, 1976) (holding that the broader scope of review under R.C. 3781.031 meant that "the trial court would not be limited to reviewing whether the order of the agency was supported by reliable, probative and substantial evidence" under R.C. 119.12, but instead would be allowed to "weigh all of the evidence before it in order to determine whether the greater weight of such evidence favors the order of the agency from which the appeal is taken"). Thus, the special statutory proceedings outlined in both R.C. 3781.031 and 119.12 applied in the trial court.

{¶ 26} Turning to the second question under *Ferguson*, we ask whether either "statute renders the civil rule at issue 'clearly inapplicable.' " *Id.* at ¶ 21. "A civil rule is clearly inapplicable ' "only when [its] use will alter the basic statutory purpose for which the specific procedure was originally provided in the special statutory action." ' " *Id.* at ¶ 24, quoting *Price v. Westinghouse Elec. Corp.*, 70 Ohio St.2d 131, 133 (1982), quoting *State ex rel. Millington v. Weir*, 60 Ohio App.2d 348, 349 (10th Dist.1978). *See State ex rel. Ohio Civ. Rights Comm. v. Gunn*, 45 Ohio St.2d 262, 266 (1976) (holding that the Civil Rules were clearly inapplicable to "a proceeding to enforce a subpoena duces tecum issued by the Civil Rights Commission" because "[t]o render the enforcement provisions of R. C. 4112.04(B)(6) subject to the complaint and summons requirements of the Civil Rules would be contrary to the [statute's] mandates").

{¶ 27} Here, the first Civil Rule at issue is 24(A), which allows for intervention of right. Given that courts have allowed intervention under Civ.R. 24(A) in R.C. 119.12 appeals, we cannot conclude that that statute renders the rule clearly inapplicable. *See, e.g.*, *South Community, Inc. v. State Emp. Relations Bd.*, 38 Ohio St.3d 224, 225 (1988) (holding that State Employee Relations Board was an "agency" for purposes of an administrative appeal under R.C. 119.12, in an action in which school union had filed a motion to intervene in the common pleas court); *Euclid v. Liquor Control Comm.*, 10th

Dist. No. 93APE12-1655, 1994 Ohio App. LEXIS 3819, *11 (Aug. 30, 1994) (affirming trial court's ruling allowing Civ.R. 24(A) intervention of original applicants in city's R.C. 119.12 administrative appeal of decision of Liquor Control Commission, as applicants "were a party to this litigation at the administrative level and have a significant interest in the outcome of this litigation").

{¶ 28} With regard to appeals of decisions of the BBA under R.C. 3781.031, we find no language in the statute that renders Civ.R. 24(A) clearly inapplicable.  R.C. 3781.031 provides only limited instructions to the trial court hearing an appeal. The instructions concern the administrative record (provided "at the expense of the agency"), venue (the appeal is to be filed in "the court of common pleas of the county in which the party is a resident or in which the premises affected by the order is located"), scope of the evidence ("any party may produce additional evidence and the court shall hear the matter upon the record and additional evidence any party introduces"), and the standard of review (the trial court can affirm only if "the preponderance of the evidence before it supports the reasonableness and lawfulness of the order and any rule of the board of building standards upon which the order is based in its application").  Intervention under Civ.R. 24 conflicts with none of the foregoing provisions. *See State ex rel. Montgomery v. Akron*, 9th Dist. No. 20698, 2002-Ohio-720 (affirming trial court's denial of motion to intervene under Civ.R. 24 by city that failed to give notice required by R.C. 3734.101(B)(2), holding that because the "statute expressly provides a specific mechanism with which to intervene in an action brought pursuant to R.C. Chapter 3734, Civ.R. 24, which addresses intervention in civil actions, does not apply"). Thus, we discern no basis for concluding that intervention under Civ.R. 24(A), when properly allowed, might "alter the basic statutory purpose" of the foregoing "specific procedure" under R.C. 3781.031. *Ferguson* at ¶ 23.  Accordingly, we turn to the School Board's first assignment of error.

## A.  First Assignment of Error

{¶ 29} In its first assignment of error, the School Board asserts that the trial court abused its discretion by granting Jane Doe's motion to intervene under Civ.R. 24(A).  The School Board argues that any interest Jane Doe has in the proceeding is not legally protectable, that she lacks standing to "appeal or participate in the administrative appeal, and that she does not qualify as a party under either R.C. 3781.031 or R.C. 119.01(G)."

(Appellant's Brief at 10-14.) The School Board also argues that the motion should have been overruled because Jane Doe did not attach a pleading to it, as required by Civ.R. 24(C). (Appellant's Brief at 15-17.)

{¶ 30} In response, Jane Doe argues that the School Board "confuses standing *to appeal* an order of the BBA with standing to intervene *as an appellee.*" (Emphasis sic.) (Brief of Appellee Intervenor at 6.) Because "it was the School [Board], not Jane Doe, that sought affirmative legal relief from the decision of the BBA," she argues that she does not have "the obligation to establish standing to appeal" the BBA's decision. (Brief of Appellee Intervenor at 7.) Citing *Wagner v. Miami Cty. Bd. of Zoning Appeals*, 2d Dist. No. 2003-CA-19, 2003-Ohio-4210, and *Riebe Living Trust v. Bd. of Lake Cty. Commrs.*, 11th Dist. No. 2011-L-105, 2013-Ohio-59, she argues that "courts have recognized that an interested non-party may intervene in an administrative appeal *as an appellee* where appropriate." (Emphasis sic.) (Brief of Appellee Intervenor at 7.) In her view, intervention was justified because "there is literally no one present in the Trial Court proceedings to defend the BBA's decision" but herself. (Brief of Appellee Intervenor at 8.)

{¶ 31} Rule 24(A) of the Ohio Rules of Civil Procedure governs intervention of right. The rule provides:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

{¶ 32} There is a "liberal construction generally accorded Civ.R. 24 in favor of intervention" if its "mandatory procedural requirements" are met. *State ex rel. SuperAmerica Group v. Licking Cty. Bd. of Elections*, 80 Ohio St.3d 182, 184 (1997). "Failure to meet any one of the elements in Civ.R. 24(A) will result in denial of the right to intervene." *Fairview Gen. Hosp. v. Fletcher*, 69 Ohio App.3d 827, 831 (10th Dist.1990).

{¶ 33} Because there is no indication that any statute conferred "an unconditional right to intervene" upon Jane Doe, we begin by examining her claimed "interest relating to the property or transaction that is the subject of the action." Civ.R. 24(A). The interest

claimed by the intervenor "must be one which is legally protectable." *State ex rel. Dispatch Printing Co. v. Columbus*, 10th Dist. No. 99AP-766, 1999 Ohio App. LEXIS 3557, *11 (Aug. 5, 1999). In addition, the interest must be direct and substantial. *Fairview Gen. Hosp.* at 833.

{¶ 34} In *Dispatch Printing Co.*, an action to obtain public records brought by a newspaper against the city's police department, a police union argued that its "interest in preventing the public disclosure of 'member identifiable information' in violation of its collective bargaining agreement" justified intervention. *Id.* at *10-11. Because "the Ohio Supreme Court addressed" the claims in another case "and expressly held that neither had any merit," we agreed with the trial court that the police union had "failed to demonstrate that it has a legally protectable interest in the present action." *Id.* at *13.

{¶ 35} In *Fairview General Hospital*, a hospital asserted that it had an interest justifying intervention in a declaratory judgment action in which another hospital sought certification of a competing neonatal intensive care unit. *Id.* at 832. We rejected the argument that a possible loss of business or increase in local health care costs amounted to an interest that was direct, substantial, or legally protectable. *Id.* at 832-33.

{¶ 36} In reviewing the trial court's ruling and Jane Doe's arguments for intervention, we find no explanation of her "interest relating to the property or transaction that is the subject of the action" that justified intervention. Civ.R. 24(A). The trial court addressed this element by stating only that she "has a personal interest in the subject matter of the appeal as the mother of a current kindergarten student who attends Windermere Elementary and will attend the new Windermere school building that is the subject of the appeal when it opens for the 2021-22 school year." (Oct. 15, 2020 Decision at 5.) Jane Doe said no more in the memorandum in support of her motion. Neither her briefing nor the trial court's rulings make any connection between her status as a mother of a school pupil and variance the parties seek. A nebulous "personal interest" is not the standard for allowing intervention of right under Civ.R. 24(A). The proposed intervenors in *Dispatch Printing Co.* and *Fairview General Hospital* were at least able to articulate an interest that related to the subject matter of the litigation. Jane Doe's personal interest as the mother of a pupil is far more attenuated and tangential than a party seeking to prevent economic loss or to protect the disclosure of its members' personnel records. Like those parties, she has

failed to articulate any direct, substantial, or legally protectable interest, and the trial court's reliance on her "personal interest" was unreasonable.

{¶ 37} Jane Doe's failure to attach a pleading to her motion to intervene as required by Civ.R. 24(C) also illustrates her lack of a legally cognizable interest in this litigation. Civ.R. 24(C) states that a motion to intervene "shall be accompanied by a pleading, as defined in Civ.R. 7(A), setting forth the claim or defense for which intervention." "Implicit" in the rule's pleading requirement is the necessity that the intervenor be able to "claim an 'interest' which is direct, substantial and legal protectable." *Fairview* at 834. "The pleading requirement is 'logical, as the applicant is asking to be made a party to the existing action.' " *Schaffer v. Jones*, 1st Dist. No. C-160684, 2017-Ohio-7730, ¶ 18, quoting *1 Baldwin's Ohio Practice, Civil Practice*, Section 24:26 (2016). "When a motion to intervene is not accompanied by a pleading, as required by Civ.R. 24(C), the motion should be denied." *Id. See also State ex rel. Citizen Action v. Hamilton Cty. Bd. of Elections*, 115 Ohio St.3d 437, 2007-Ohio-5379, ¶ 22 (denying intervention because proposed intervenor "did not file any pleading with its motion" and was untimely). The lack of a pleading stating a claim or defense should have prompted the trial court to more critically inquire into the nature of Jane Doe's interest. Instead, it accepted an accompanying motion for relief from judgment under Civ.R. 60(B) as "compliant" with the rule. (Oct. 15, 2020 Decision at 6.) Because the motion was not compliant with the rule's pleading requirement, the trial court's reasoning was not sound.

{¶ 38} Although not raised by the School Board, we also question the trial court's reasoning on the timeliness of the motion to intervene. The Supreme Court of Ohio has:

> [L]aid out five factors for determining whether a motion to intervene is timely:
>
> "(1) the point to which the suit had progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure after he knew or reasonably should have known of his interest in the case to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention."

*State ex rel. N.G. v. Cuyahoga Cty. Court of Common Pleas*, 147 Ohio St.3d 432, 2016-Ohio-1519, ¶ 23, quoting *State ex rel. First New Shiloh Baptist Church v. Meagher*, 82 Ohio St.3d 501, 502-03 (1998).

{¶ 39} When finding the motion timely, the trial court reasoned that "the existing parties to this appeal will not be unduly inconvenienced or prejudiced if Jane Doe is permitted to intervene because the appeal period has not run, the matter has not yet been remanded to the [BBA], and no variance has been issued."  (Oct. 15, 2020 Decision at 6.) However, any inconvenience or prejudice to the existing parties could not have been known to the trial court because it granted Jane Doe's motion the day after she filed it.  In doing so, the trial court denied the parties the opportunity to respond allowed by the Civil Rules. *See* Civ.R. 6(C)(1) ("Responses to a written motion * * * may be served within fourteen days after service of the motion").  " 'If a trial court disregards the response time created by the Ohio Rules of Civil Procedure, that court has committed reversible error.' " *Cuervo v. Snell*, 10th Dist. No. 99AP-1442, 2000 Ohio App. LEXIS 4404, *8 (Sep. 26, 2000), quoting *Gibson-Myers & Assoc. v. Pearce*, 9th Dist. No. 19358, 1999 Ohio App. LEXIS 5010 (Oct. 27, 1999).  *See also Miller v. Lint*, 62 Ohio St.2d 209, 215 (1980) ("However hurried a court may be in its efforts to reach the merits of a controversy, the integrity of procedural rules is dependent upon consistent enforcement because the only fair and reasonable alternative thereto is complete abandonment.").

{¶ 40} The trial court's other reasons for finding the motion timely were not persuasive.  The significance of the fact that the appeals period had "not run" is unclear. *Compare* App.R. 4(A)(1) (requiring notice of appeal to be filed "within 30 days" of final order's entry) *with* Sept. 15, 2020 Jgmt. Entry and Oct. 15, 2020 Decision.  One day remained in the appeal period when the trial court ruled, but the salient fact was that Jane Doe filed the motion to intervene after the entry of judgment.  "Intervention after final judgment has been entered is unusual and ordinarily will not be granted." *State ex rel. First New Shiloh Baptist Church* at 503-04.  It is also not clear why the trial court stated that the matter had not yet been remanded to the BBA when its judgment doing so with instructions to issue the variance had been entered by the clerk some 29 days earlier. *Compare* Civ.R. 58(A)(1) ("A judgment is effective only when entered by the clerk upon the journal") *with* Sept. 15, 2020 Jgmt. Entry.

{¶ 41} Jane Doe cites several cases in support of her contention that, notwithstanding the requirement of Civ.R. 24(A) that she have an interest in the proceeding in order to intervene, she should be able "to participate in this matter *as an appellee.*" (Emphasis sic.) (Brief of Appellee Intervenor at 6.)

{¶ 42} In *Wagner v. Miami Cty. Bd. of Zoning Appeals*, 2d Dist. No. 2003-CA-19, 2003-Ohio-4210, ¶ 17, the appellate court reversed the trial court's denial of the appellants' motion to intervene on the sole ground that it "prematurely decided the motion to intervene, in violation of" its local rules, by ruling before the appellants had been able to present arguments in a reply brief. The appellants' "interest" under Civ.R. 24(A) was not addressed by the Second District Court of Appeals, but we note that they were property owners that had "opposed the granting of [a] conditional use permit" sought by a neighbor for mineral extraction. *Id.* at ¶ 1. Unlike Jane Doe, they had "retained counsel and participated in the administrative hearing process, presenting evidence in opposition" there before the appeal to the trial court. *Id.* at ¶ 3.

{¶ 43} In *Riebe Living Trust v. Bd. of Lake Cty. Commrs.*, 11th Dist. No. 2011-L-105, 2013-Ohio-59, the Eleventh District Court of Appeals reversed a trial court's ruling that the proposed intervenors' motion was untimely. There were "disputed facts" concerning whether the proposed intervenors had actual knowledge of the litigation and a settlement agreement between the parties. *Id.* at ¶ 21. The trial court did not hold an evidentiary hearing and "to the extent that the trial court's decision [was] based on the conclusion that [they] knew about the litigation, it [was] incorrect as a matter of law because that issue was not adjudicated in a manner that would have properly resolved the disputed facts." *Id.* The proposed intervenors were property owners facing a $23,000 tap-in fee for a sewer line arising from the parties' settlement agreement. As in *Wagner*, the issue of the proposed intervenors' "interest" under Civ.R. 24(A) was not at issue.

{¶ 44} Neither *Wagner* nor *Riebe Living Trust* relieve Jane Doe of the burden to state a direct, substantial, and legally protectable interest in order to intervene under Civ.R. 24(A). Because she did not, it was unreasonable for the trial court to sustain her motion and an abuse of discretion to allow intervention. The voting booth, not the trial court, was the appropriate forum for Jane Doe to advance her interests. *See Youngstown Edn. Assn. v. Youngstown City Bd. of Edn.*, 36 Ohio App.2d 35, 38 (7th Dist.1973) (affirming denial of

Civ.R. 24 motion for intervention of right and permissive intervention filed by "concerned" group of parents in litigation between school board and teachers, and "point[ing] out that [the parents] are, as are all other citizens * * *, represented in school-teacher community matters by an elected board. This is the result of a representative form of government. They are bound to 'live with' their representatives.").

{¶ 45} The first assignment of error is sustained.

### B. Second Assignment of Error

{¶ 46} In support of the second assignment of error, the School Board argues that a Civ.R. 60(B) motion such as the one Jane Doe filed, is "clearly inapplicable" to an administrative appeal filed in the common pleas court pursuant to a special statutory proceeding under R.C. 119.12 or 3781.031. (Appellant's Brief at 19.) The School Board also argues that Jane Doe's motion did not satisfy the requirements for relief under Civ.R. 60(B), and that the trial court's conclusion that its previous summary judgment ruling was "void *ab initio*" was "legally flawed." (Appellant's Brief at 21-27.)

{¶ 47} In response, Jane Doe argues that Civ.R. 60(B) may apply to appeals under R.C. 3781.031 because they "are materially different from those under R.C. 119.12," as they may involve the introduction of additional evidence. (Brief of Appellee Intervenor at 20.) In addition, R.C. 3781.031 does not contain the language in R.C. 119.12(O) that states that the trial court's judgment "shall be final and conclusive unless reversed, vacated or modified on appeal." (Brief of Appellee Intervenor at 21.) She also points out that the trial court did not actually grant the motion for relief from judgment on the grounds raised by her motion, but instead "vacated its prior entry of summary judgment as void"; thus, she requests that the case be remanded for the trial court to consider her motion on its merits. (Brief of Appellee Intervenor at 14.)

{¶ 48} Because we have held that the trial court abused its discretion when it granted Jane Doe's motion to intervene, she did not have standing to have her motion for relief from judgment to be considered on its merits. *See Ericsson Inc. v. InterDigital Communications Corp.*, 418 F.3d 1217, 1224 (Fed.Cir.2005) ("Without intervention, there is no proper party with standing to be afforded relief under Rule 60(b)."); *See also Lopez v. Merit Ins. Co.*, 109 Nev. 553, 853 P.2d 1266 (Nev.1993) (holding that due to an erroneous grant of intervention, the proposed intervenor had never actually been a party and could not

therefore seek relief from judgment under applicable civil rule).  Thus, if the trial court had granted relief under Civ.R. 60(B), we would not review the merits of the ruling, but would instead simply vacate it as an artifact of its erroneous ruling granting intervention.  *See Ericsson* at 1224.

{¶ 49} Here, however, the trial court's reasons had nothing to do with the arguments under Civ.R. 60(B) raised in Jane Doe's motion.  Thus, we are compelled to address the trial court's ruling. It reasoned as follows:

> Without determining whether the Civil Rules apply, the Court finds that its grant of summary judgment was procedurally improper. While the Court was initially surprised that a Joint Motion for Summary Judgment had been filed in an administrative appeal, it relied upon the representations of counsel for both the School Board and the City that such a motion was uncontested and was proper, necessary and appropriate given time constraints and the interests of judicial economy. However, based upon subsequent developments, the Court questions the procedural vehicle used to obtain the desired result (i.e., a joint motion for summary judgment as opposed to the normal administrative appellate briefing schedule).[] The Court finds that the Joint Motion for Summary Judgment circumvented the normal procedure for administrative appeals and the Court's deviance therefrom was procedurally improper. Instead, the Court should have followed the normal briefing schedule and allowed the record to fully develop before rend[er]ing a decision. Therefore, the Court's September 15, 2020 Entry granting summary judgment is void *ab initio.*

(Emphasis sic.) (Nov. 30, 2020 Decision and Entry at 5.)

{¶ 50} Because the trial court did not actually grant the motion for relief from judgment under Civ.R. 60(B), any discussion of whether the rule is "clearly inapplicable" in an R.C. 3781.031 appeal would be advisory.  *See, e.g., German Village Soc., Inc. v. Columbus City Council*, 10th Dist. No. 91AP-1122, 1992 Ohio App. LEXIS 2152, *10 (Apr. 16, 1992) (declining to "issue what would be an advisory opinion" on appellant's assignment of error after determining that the trial court had lacked jurisdiction to enter judgment upholding variance).  We therefore decline to address that issue and instead turn to the trial court's actual reason for vacating the judgment.

{¶ 51} We emphasize that the trial court ruled that its judgment was "void *ab initio*" because, in granting the parties' motion for summary judgment, it had "circumvented the normal procedure for administrative appeals" by ruling on the parties' motion. (Nov. 30, 2020 Decision and Entry.) Instead, the trial court believed that it "should have followed the normal briefing schedule and allowed the record to fully develop before rend[er]ing a decision."[1] *Id.*

{¶ 52} Any procedural irregularity that led the trial court to grant summary judgment did not render the judgment void. "Procedural irregularities affect the court's jurisdiction over the particular case and render a judgment voidable, whereas a judgment rendered by a court that lacks subject-matter jurisdiction is void." *Howell v. Howell*, 10th Dist. No. 13AP-961, 2014-Ohio-2195, ¶ 8, citing *In re J.J.*, 111 Ohio St.3d 205, 2006-Ohio-5484, paragraph one of syllabus. In this case, there is no indication that the trial court lacked subject-matter jurisdiction over the appeal or personal jurisdiction over the parties that would have justified employing its inherent power to vacate void judgments. *See Patton v. Diemer*, 35 Ohio St.3d 68, 70 (1988) (holding that "a judgment rendered by a court lacking subject matter jurisdiction is void *ab initio*. Consequently, the authority to vacate a void judgment is not derived from Civ.R. 60(B), but rather constitutes an inherent power possessed by Ohio courts"). The defects perceived by the trial court describe only a voidable judgment, but "[a] court has no inherent authority to vacate voidable judgments." *Howell* at ¶ 8, citing *McIntyre v. Braydich*, 11th Dist. No. 96-T-5602, 1997 Ohio App. LEXIS 5449 (Dec. 5, 1997). *See also Yakubik v. Yakubik*, 9th Dist. No. 19587, 2000 Ohio App. LEXIS 1267, *6 (Mar. 29, 2000) ("Correcting errors of law made by the trial court is properly the role of the appellate court, not the trial court."). Moreover, we question the trial court's assessment of summary judgment in an R.C. 3781.031 appeal as "procedurally improper," as it has been used as a vehicle to resolve such appeals in the Franklin County Court of Common Pleas. *See Sergakis*. In light of the foregoing, we conclude that the trial court erred when it vacated its entry of summary judgment. The second assignment of error is sustained.

---

[1] Although the trial court claimed that the parties' "Joint Motion for Summary Judgment circumvented the normal procedure for administrative appeals," the School Board filed a brief with supporting exhibits on September 2, 2020 in support of the appeal, some six weeks before Jane Doe filed the motion to intervene on October 14, 2020.

**IV. CONCLUSION**

{¶ 53} Because Jane Doe lacked a legally protectable interest in this case, the trial court abused its discretion by granting her motion to intervene under Civ.R. 24(A).  The trial court also erred by vacating its previous entry of summary judgment, which was not void.  Accordingly, we sustain the School Board's assignments of error and vacate trial court's rulings.  We remand the case to the trial court for further proceedings consistent with this decision.

*Judgment reversed; case remanded.*

BROWN and BEATTY BLUNT, JJ., concur.

————————————